### C. C. BAKER V. J. W. LIGHT ET AL.

#### No. 6940.

1. **Calls in Survey.** — A call for a line or point within a survey for a given distance to the boundary line of the tract of which the survey is a part will extend to the line so called for although at a greater distance than called for, and notwithstanding such line called for is an open line, or not actually run and marked upon the ground.

2. **Unmarked Line as a Call.** — Ordinarily a call for course and distance will control a call for an unmarked line, especially when the circumstances tend to show that the surveyor was unacquainted with the true locality of the line and called for it by mistake.

3. **More or Less.** — The words *more or less* may indicate the intention of the parties, as when its presence would be meaningless except upon the one construction. See the facts.

4. **Actual Survey.** — If at the distance called for the surveyor establish a line or corners while calling for an open line not reached, the actual corners and line established will control and the call for the line be disregarded.

5. **Taken out of Southwest Corner.** — The words "*taken out* of the southeast corner of survey No. 4" show that it was the intention of the parties that the land should extend to the east as well as the south line of the original survey.

APPEAL from Bexar. Tried below before Hon. G. H. Noonan. The opinion states the case.

*Denman & Franklin*, for appellant.—The court erred in refusing section 3 of special charge No. 1 asked by plaintiff, as follows: "The undisputed evidence of both plaintiff and defendants showed that the southeast corner of the Longavilla survey was not marked out or established on the ground at the time of the execution of the deed from Von Roy to J. W. Light, and therefore calls for said southeast line and southeast corner of said Longavilla survey in said deed from Von Roy to J. W. Light must give way to and be controlled by the calls for course and distance in said last mentioned deed to J. W. Light." McCown v. Hill, 26 Texas, 361; Browning's Administratrix v. Atkinson, 37 Texas, 658; Booth v. Strippleman, 26 Texas, 440; Woods v. Robinson, 68 Texas, 656; Phillips v. Ayers, 45 Texas, 602; Davis v. Smith, 61 Texas, 18.

*Shook & Vander Hoeven*, for appellees.—1. As in the case of all contracts, the intent of the parties to the deed, if it can by any possibility be gathered from the language employed, is to be sought by looking at the whole instrument, and none is to be rejected; and a deed will always be expounded so as to give effect to the intent of the parties. Swisher v. Grumbles, 18 Texas, 164; Mulford v. Le Franc, 26 Cal., 88; Salesbury v. Andrews, 19 Pick., 250, 252; Winnipiseogee Co. v. Perley, 46 N. H., 83; Wolfe v. Scarborough, 2 Ohio St., 361; Peyton v. Ayres, 2 Md. Ch., 64; Calkins v. Lavelle, 44 Vt., 230; Cocheco Co. v. Whittier, 10 N. H., 305; Bradley v. The W. A. & G. S. P. Co., 13 Peters, 89; Brannan v. Mesick, 10 Cal., 95; Bent v. Rogers, 137 Mass., 192; Bryan v. Bradley, 16 Conn., 474; Litchfield v. Cudworth, 15 Pick., 23; Mills v. Cattin, 22 Vt., 98; Waterman v. Andrews, 14 R. I., 589; Frost v. Spaulding, 19 Pick., 445; Fuchs v. Treat, 41 Wis., 404.

2. It is a well settled rule of law that in the construction of deeds if there are two clauses which are inconsistent with each other the last must give way to the first. If, however, to the first part of the description is added that which modifies or controls what precedes it, the latter part is not to be rejected as repugnant, but the whole language of the deed is to be construed together if it may be in order to ascertain the true construction. And where all other means of ascertaining the true construction of a deed fail, and a doubt still remains, that construction must prevail which is the most favorable to the grantee. Petty v. Boothe, 19 Ala., 633; Tubbs v. Gatewood, 26 Ark., 128; Clough v. Bowman, 15 N. H., 504; Mills v. Catlin, 22 Vt., 98; Foy v. Neal, 2 Strobh., 156.

3. Extrinsic evidence is always admissible to explain the calls of a deed for the purposes of their application to the subject matter, and thus to give effect to the deed. And where the true location of the land in dispute has been ascertained, parol evidence is admissible to show the proper location of all the descriptive designations and calls

of the deed, to the end of determining whether or not the land in dispute passed by it, and thus give effect to the true intent of the parties. Reamer v. Nesmith, 34 Cal., 624; Chase v. White, 41 Me., 228; Waterman v. Johnson, 13 Pick., 261; Tenant v. Hampleton, 3 Har. & Johns., 233; Kip v. Norton, 12 Wend., 127.

4. In a contest of boundary between two parties who have purchased adjoining tracts from a common vendor, the line which their vendor had caused to be run as the dividing line between the two tracts before he sold them will be recognized as the dividing line between the two parties deriving title from him. Under such circumstances, if either party has not the quantity of land called for by his title he must seek it from his vendor and not from the proprietor of the adjoining tract, who does not claim or possess beyond the line established by their common vendor. Bolton v. Lann, 16 Texas, 96; Tyler's Law of Boundaries, pp. 335, 338; Martindale Law of Conveyancing, p. 87, sec. 106.

GAINES, ASSOCIATE JUSTICE.—This was an action of trespass to try title brought by the appellant to recover of appellees a strip of land 1564 varas long and about 212 wide, a part of a survey in Bexar County known as the Francisco Longavilla survey No. 4.

The following is a map of the Longavilla survey and its subsurveys, together with the Martinez, which joins it on the east:

The letters *f*, *g*, *h*, and *i* designate the corners of the land in controversy. Both parties claim under one F. Von Roy—the defendants under a deed from him to J. W. Light dated December 14, 1874, and the plaintiff under a deed from the same grantor dated December 1, 1882. The latter deed purports to convey the strip in controversy by a description in which there is no ambiguity. The land conveyed to J. W. Light is described in his conveyance as follows:

"Being 400 acres, more or less, taken out of the southeast corner of survey No. 4 in the name of Francisco Longavilla. Said 400-acre tract is more particularly described and bounded as follows: Beginning at a stake set for the southeast corner of said survey No. 4; thence north 76 west 1446 varas to a stake set on the southwest boundary line of said survey No. 4 for the southwest corner of this tract; thence north 14 east 1564 varas to a stone set in the ground marked X for the northwest corner of this tract, from which a mesquite 15 inches in diameter bears north 28½ east 12 varas, do. 12 inches in diameter bears north 38½ east 25 varas, do. 12 inches diameter bears south 55½ east 18 varas; thence south 76 east 1445 varas to a stake set on the southeast line of survey No. 4 for the northeast corner of this tract; thence south 14 west 1564 varas to the place of beginning, according to a survey made by T. C. Nelson, deputy county surveyor, November 24, 1874."

It was admitted that the Longavilla survey No. 4 and the Martinez survey No. 104 "join each other and have a common boundary line, marked on the map *k h i*, and that said boundary line is the true east or southeast boundary line of survey No. 4, * * * and was not found on the ground at the time Light bought." It was also admitted that at that time the northeast and southwest corners of survey No. 4 were not marked on the ground and could not be identified, but that since that time and before Von Roy conveyed to the plaintiff the dividing line between surveys No. 4 and No. 104 was established by agreement.

The controversy grew out of an ambiguity in the description of the land in the deed from Von Roy to Light. This ambiguity was disclosed when the boundary line between the Longavilla and the Martinez surveys was established. The northwest and southwest corners of defendant's tract are well established and there is no dispute as to their location. The third call in the deed is for the line which runs in an eastern direction from the northwest corner, and is as follows: "Thence south 76 east 1445 varas to a stake on the southeast line of survey No. 4." This distance called for reaches only to the point *g* shown upon the map, and is not sufficient by 212 varas to reach the east boundary of the survey. There is a corresponding discrepancy in the calls of the first line, which are as follows: "Beginning at a stake set for the southeast corner of survey No. 4, thence north 76 west 1446 varas to a stake set on the southwest boundary line of said survey No. 104." Between the latter point, about the location of which there is no dispute, and the southeast corner of the survey as established the distance is 1658 varas instead of 1446 as called for.

The plaintiff claims that the call in the deed for distance should prevail over the calls for southeast corner and the east line of the original survey, while defendants claim that the latter should control. If the

construction claimed by plaintiff be correct, then he had title to the
land in dispute.

The defendant Light testified as follows: "Just before the execution
of the deed from Von Roy to me, in evidence, I told General Young,
who was agent for Von Roy, that I wanted the land surveyed before
the deed was made and the purchase completed. He thereupon sent
out with me for the purpose of surveying out my land T. C. Nelson,
deputy county surveyor at that time, who was paid for his services by
Von Roy. We began at a point marked *a* on the map in evidence, and
which is a corner of an adjoining survey, and ran in a southern direc-
tion the course and distance called for in the original field notes of sur-
vey No. 4 to find its true corner. When we ran out the course and
distance we reached the point *b*, or very nearly that point, where we
could find no corner. We then ran from there according to course and
distance called for in the original field notes of survey No. 4 as its south
or southwestern line, for the purpose of finding the southeast corner of
said survey No. 4. We ran this line from the point *b* as indicated on
the map, and on the route passed the point marked *c* on the map, which
represents the southwest corner of my tract of land. As we were run-
ning the line from the point *b*, as aforesaid, when we had run one-half
the distance called for in the original field notes of said survey No. 4
as its south or southwest line, I told the surveyor to drive down a stake,
so that if by running out the balance of the distance called for as the
south or southwest line of survey No. 4 we failed to find the southeast
corner of survey No. 4 we could return to said stake and make it the
southwest corner of my land. The surveyor drove down the stake at
the point *c* on said map indicated, which is 1445 varas distant from the
point *b* on said map, the whole length of said south or southwest line
of survey No. 4 being 2890 varas according to the calls in the original
field notes of said survey. We then ran from the point *c*, where we had
driven down the stake (continuing the course called for in said field
notes of survey No. 4), 1445 varas to find the southeast corner of sur-
vey No. 4 aforesaid. When we had run out the course and distance we
made a careful search for the southeast corner of survey No. 4 afore-
said, but could not find same nor any indication of its true locality.
As we were running the said south or southwest line of survey No. 4
as aforesaid we found along the route we ran at various places old
marked line trees. Not being able to find southeast corner of survey
No. 4 we returned to the beginning point, marked *a* on the map; from
thence we ran the course and distance called for in the original field
notes of survey No. 4 to find its northwest corner, which brought us to
the point *e* on the map; thence we ran course called for in original field
notes to survey No. 4 the distance called for therein, to-wit, 2890 varas,
for the purpose of finding the northeast corner of survey No. 4. At the
point thus reached we made a careful search for northeast corner of sur-

vey No. 4, but could not find same nor any indication thereof. We then made a careful search for the east or southeast line of survey of No. 4, but could find no trace of same. In making the search we were brought back to the locality where we had searched for the southeast corner of survey No. 4, as above stated.

"Not being able to find the northeast or southeast corners nor the east line of same, as above stated, we then returned to point *c* shown on the map, where we had driven down the stake as aforesaid, from which point we ran as called for in the deed in evidence from Von Roy to me N. 14 E. 1564 varas, and there we set in the ground a stone and marked it X to indicate the northwest corner of the land I was buying. This stone we set at the point *d* on the map in evidence, and it is still there with the bearing trees which we then marked and as called for in my deed from Von Roy aforesaid, and same has always been claimed by me as my northwest corner. From the survey made of the line *c d* as aforesaid and the location of the southwest corner of my land at the stake set as aforesaid at the point *c* on the map as aforesaid, and the location of the northwest corner of the survey at the stone marked X set in the ground at the point *d* on the map as aforesaid, the surveyor said he could write the field notes.

"We did not run out the north line of my land nor the east line, nor did we set a stake for the northeast and southeast corners of my land as called for in the deed from Von Roy to me in evidence. No such stakes were ever set. We then returned home, and from the survey made as aforesaid the surveyor drew the field notes from which my deed was written. I had the words "more or less" put into the deed, and would not accept it until said words were put in.

"The division line between surveys Nos. 4 and 104 indicated by the letters *k h i* on the map in evidence runs through a section of country with some large live oak trees, and there are no line marks thereon indicating that the division line of said two surveys was marked on the ground; at least we did not find them. Some years after I bought, and before Baker bought from Von Roy, John James, who was a surveyor and the owner of survey No. 4, in the name of Martinez aforesaid, surveyed out survey 104 and established the division line *k h i* on map, which has ever since been agreed upon by all to be the true division line between surveys Nos. 4 and 104. If you begin at the stone marked X, at point *d* on map, and run the course called for in the deed from Von Roy to me for my north line 1445 varas, the distance called for therein, you will not reach the line *k h i* on the map, which is now admitted to be the true boundary between surveys 4 and 104, but you would stop before you reached said east line. I do not know how far it is from the point *g* to the division line *k h i*. If my land were measured out beginning at the point *d* on the map at the stone marked X and run thence by the courses and distances called for in my field notes

in the deed from Von Roy to me, disregarding the call for the east line and southeast corner of survey No. 4, there would be left a rectangular piece of land (indicated by the letters *f g h i* on the map) between my land thus run out and the true boundary line *k h i* on the map, and I think it would contain about twenty-five acres. Am not positive as to the number of acres, as I never saw it measured."

This testimony was not contradicted in any particular.

The counsel for plaintiff asked the court to charge the jury in effect that since the undisputed evidence shows that at the date of defendant's deed the southeast line and the southeast corner of the Longavilla survey was not marked upon the ground, the calls in the deed for that line and that corner must give way to the calls for distance. They also requested a charge to the effect that the jury should find a verdict for the plaintiff if the land in controversy was not embraced in the following boundaries: Beginning at the stone called for in Light's deed for his northwest corner and running thence south 76 east 1445 varas; thence south 14 west 1564 varas; thence north 76 west 1445 varas, and thence north 14 east 1554 varas to the beginning. The refusal of each of these instructions is assigned as error.

We are of the opinion that the charges were properly refused. Ordinarily when there is proof that the calls in a deed are taken from the field notes of an actual survey, a call for distance will control a call for an unmarked line, especially when the circumstances tend to show that the surveyor was unacquainted with the true locality of the line and called for it by mistake. Such were the cases of Gerald v. Freeman, 68 Texas, 201, and of McCown v. Hill, 26 Texas, 361. In a case of two inconsistent calls of such a character one of them is usually the result of mistake; and when it can be ascertained which is the mistaken call it will be rejected and the other adopted as that expressive of the true intention of the parties. If in the present case, when Light went upon the ground with the surveyor and caused the survey to be made, they had established corners at the points *g* and *f* upon the foregoing map as the northeast and southeast corners of the land to be conveyed, then there can be no question but that the calls for the east line and the southeast corner of the original survey should be rejected. That call must be followed which corresponds with the survey as actually made. But the testimony shows that Light and the surveyor did not establish corners at the points indicated. It tends very strongly to prove that the reason why this was not done was because they failed to find any evidence of the east line and corners of the original survey at the distance called for in its field notes. No corner having been marked or otherwise fixed at the point marked *f* when the survey was made, though the surveyor ran to that point, the question is, what did the parties to the deed intend? Was it their purpose that the deed should convey all the land lying between the north and south lines as ex-

tended eastward to the line and corner of the original survey, or did they intend the east line of the land conveyed should be where the distance called for would place it? We think the intention was to convey the land up to the east line of the original survey. In the light of the circumstance that in surveying the land the east line and corners of the Longavilla survey had been searched for and had not been found, the use of the words "more or less" following the number of acres stated in the description indicates that the parties to the conveyance intended to convey all the land in the southeast corner of the grantee's tract, and that they were aware that when the east line was established there might be either a deficiency or excess in the quantity. If the distances called for in the deed were to control, the number of acres conveyed were fixed, and the words "more or less" would be meaningless. The defendant J. W. Light testified that he insisted upon having the words inserted in the conveyance, and they are presumed to have been inserted for some purpose. Besides, the language "four hundred acres, more or less, *taken out of the southeast corner* of survey No. 4," shows that it was the intention that the land should extend to the east as well as the south line of the original survey.

In view of the undisputed evidence in the case we are of the opinion that the land in controversy passed by the deed from Von Roy to Light. It follows from this conclusion that it is unimportant whether or not the court erred in admitting the testimony of the witness Beck. If error, the plaintiff was not prejudiced by it, because with or without this testimony the only proper result of the trial was a judgment for the defendants. Bowles v. Brice, 66 Texas, 724.

There is no error in the proceedings which requires a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

Delivered April 28, 1891.