DOWNS v. FARMERS' LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 25, 1897.)

No. 502.

RAILROAD MORTGAGES—FORECLOSURE—RIGHTS OF PURCHASER—NET EARNINGS OF RECEIVERSHIP.

On the foreclosure sale of a railroad, then in possession of a receiver, one division of the road was sold subject to a prior mortgage, which expressly secured to the bondholders the net income of the property after default in interest. While the road was still in possession of the receiver, a suit was brought to foreclose this senior mortgage, and the existing receiver was also appointed as receiver in that suit, and continued in possession until the sale, some years later, under the senior mortgage. Held, that the purchaser at the first sale was not entitled to the net earnings of the division covered by the senior mortgage, which had accumulated in the hands of the receiver, after his appointment in the second suit, but the same belonged to the bondholders under the terms of the mortgage.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

Prior to May 27, 1886, separate bills were filed in the circuit court to foreclose certain mortgages executed by the Houston & Texas Central Railway Company, and for the appointment of a receiver. The mortgages sought to be foreclosed in these suits covered the main line of the Houston & Texas Central Railway, the Western Division, and the Waco & Northwestern Division of said railway. On May 27, 1886, the suits above mentioned were consolidated, and thereafter proceeded as consolidated cause No. 198, in which Nelson S. Easton and James Rintoul, trustees, and the Farmers' Loan & Trust Company, trustee, were complainants, and the Houston & Texas Central Railway Company and others were defendants. Of all the property of the Houston & Texas Central Railway Company receivers were duly appointed, who took possession and operated the railway under orders of the court. In the consolidated cause, cross bills were filed for the foreclosure of the Main Line and Western Division consolidated mortgage, the Waco & Northwestern Division consolidated mortgage, and the income and indemnity mortgage. A decree of foreclosure and sale was entered by the court May 4, 1888. In pursuance of the decree the entire property of the Houston & Texas Central Railway Company was sold by the master commissioner September 8, 1888. At such sale all the property included in the Waco & Northwestern Division first mortgage, which was executed June 16, 1873, by the Houston & Texas Central Railway Company to the Farmers' Loan & Trust Company, was sold to George E. Downs, the appellant, for the sum of $25,000 in cash. The decree of foreclosure in consolidated cause No. 198 provided that the sale of the Waco & Northwestern Division of the railway should be made in all things subject to the prior lien and mortgage executed on said division by the Houston & Texas Central Railway Company on the date last aforesaid. Thereafter, to wit, December 4, 1888, the sale was confirmed, and a deed executed by the commissioner to Downs, January 18, 1889, in which it was expressly stated that the purchase by Downs was made in all things subject to the first mortgage of appellee the Farmers' Loan & Trust Company. On April 6, 1889, the appellee the Farmers' Loan & Trust Company, trustee for the bondholders, filed its bill in this suit in the circuit court (equity cause No. 227) against the Houston & Texas Central Railway Company and Charles Dillingham, the sole receiver then operating the railway, to foreclose the first mortgage of June 16, 1873, on the Waco & Northwestern Division, and for the appointment of a receiver. Agreeably to the prayer of the bill, a receiver was appointed on the same day, to wit, April 6, 1889, by an order which, among other things, provided as follows: "Whereupon, and on consideration whereof, the court consenting that said Charles Dillingham, as receiver of the Houston & Texas Central Company, be a party defendant herein, it is ordered, adjudged, and decreed by the court that Charles Dillingham, who is already in possession of the Houston & Texas Central lines of railway as receiver under orders of this court, be, and he is hereby, appointed receiver, under the prayer of the bill so filed for the foreclosure of the said Waco & Northwestern Division first mortgage, of all the railway and property which is covered by said mortgage, with power to manage and operate the same, and prosecute and defend all suits connected therewith, and generally to discharge all the duties of receiver respecting such railway property, and that he be appointed such receiver without giving further bond than that which he has already filed in the consolidated cause." An amended bill was filed December 3, 1889, making the appellant a party defendant, and an order of dismissal was entered as to the Houston & Texas Central Railway Company, December 26, 1890.

The original bill filed by the Farmers' Loan & Trust Company in this suit alleged that the mortgage sought to be foreclosed was made to secure the payment of 1,140 bonds of the denomination of $1,000 each, and that certain interest coupons were past due and unpaid; that the appellant, Downs, had purchased the property included in its mortgage at the sale made by the master commissioner under the order of the court passed in consolidated cause No. 198, subject in all things to the lien of said mortgage. It was further alleged "that holders of bonds to the extent of $356,000 of principal now desire

your orator, as trustee, to proceed under those clauses of said mortgage which provide for your orator, as trustee, taking possession of the mortgaged premises and operating the same; that holders of bonds to the amount of $234,000 of principal are opposed to that course, desiring the foreclosure of said mortgage; that holders of $300,000 of said bonds (being unknown to your orator) have expressed no opinion on the subject whatever, and that the holder of $250,000 of said bonds, having at one time joined in the first request, has expressed her wish to withdraw therefrom." The bill prayed an accounting, a sale of the property embraced in the mortgage, and, as affecting the questions here involved, contained the following prayer: "That out of the proceeds of said sale or the net earnings of said property there may be paid, first, the costs and expenses of your orator in this suit, and all its expenses of every sort and description involved in the execution of its trust, including proper attorneys' and counsel fees, with a proper compensation to your orator for its own services as trustee, to be allowed by the court, and that the residue thereof may be applied to the payment of the amount due upon the said first mortgage bonds and the coupons thereto, with interest thereon; that, if there be any surplus, it may be applied in such way as this court may direct; and that the defendants in this suit may be barred of and from any equity of redemption of, to, and in the said property and franchises; and that any deficiency on such sale may be entered in this cause as a judgment against the Houston & Texas Central Railway Company." A final decree was rendered March 16, 1892, foreclosing the mortgage, and ordering a sale of the property. By the terms of the decree the rights of all interveners were reserved for future adjudication, and were to be in no manner affected or prejudiced by the decree. And it was further provided that the disposition of surplus funds in the hands of the receiver, and arising from the earnings of the road or otherwise, should be reserved for future determination. The railway and other property described in the decree were sold, conformably to the order of the court, December 28, 1892, and upon confirmation of the sale by the court a deed was tendered to the purchaser. This deed the purchaser declined to accept, and a controversy resulted between him, the appellee the Farmers' Loan & Trust Company, and one of the bondholders, which eventually culminated, March 5, 1895, in an amendatory final decree setting aside the sale, relieving the purchaser from his bid, and ordering a resale of the property. The decree of March 5, 1895, contains the following reservation as to the surplus funds and the right of appellant to claim the net earnings of the property: "It is further ordered, adjudged, and decreed that * * * the right of said George E. Downs to a hearing on his claim to the earnings of the property since his purchase be, and they are hereby, reserved to be hereafter adjudicated, and are in no manner affected or prejudiced by this decree. It is further ordered that the disposition of any surplus funds, arising from the earnings of the road or otherwise, that may be in the hands of the receiver, or to the credit of this cause, be reserved for future determination." The decree directed the fund to arise from the sale to be applied as follows: "(1) To the payment of costs, etc. (2) To the payment of matured and unpaid coupons appertaining to the bonds issued under said mortgage, and interest thereon to the date of payment thereof, and any accrued but unpaid interest on account of coupons not then matured; or, if the funds be not sufficient to pay the same, then the said coupons, with the interest thereon, and such accrued interest, shall be paid pro rata. (3) To the payment of the principal of said bonds, or, if the funds be not sufficient to pay the same in full, then the principal of said bonds shall be paid pro rata." Pursuant to the directions of this decree, the property was resold by the master commissioner September 3, 1895.

The appellant, having been made a party defendant to the suit December 3, 1889, answered the bill February 2, 1891. On March 15, 1892, a motion, made by the appellant to vacate the order of April 6, 1889, for the appointment of a receiver, was heard and overruled by the court. A petition was filed by the appellant in the cause, October 22, 1895, in which he asserted ownership of the net earnings derived from the operation of the railway for the period intermediate his purchase of the property, September 8, 1888, pursuant to the order of sale entered in consolidated cause No. 198, and the sale of the railway made September 3, 1895, as directed by the final decree in this

suit. Moran Bros. and others, who had previously intervened in the cause, and the Farmers' Loan & Trust Company, filed their objections to the petition of appellant, all of which were, by order of the court, referred to a master for examination. The master made his report thereon January 6, 1896, to which no exceptions were taken, and an order was entered confirming the report, denying the right of appellant to the earnings of the railway, and dismissing his petition. From this order Downs appeals, and assigns error.

Wm. Grant, for appellant.

L. W. Campbell, for appellees Moran Bros. and Henry K. McHarg.

Before TOULMIN, MAXEY, and PARLANGE, District Judges.

MAXEY, District Judge, after stating the case, delivered the opinion of the court.

The appellant was made a party defendant to the suit in the court below December 3, 1889. On March 15, 1892, it appears that the circuit court overruled a motion made by him to vacate the receivership, from which no appeal was taken; nor did he appeal from the final decree of the court, passed March 8, 1895. His petition, in which he claimed the right to the net earnings of the railway as purchaser of the property, was filed October 22, 1895, and it was to the order made thereon January 6, 1896, that he objected, and from which he appealed. It is clear, therefore, that he is not in a position to assail here the action of the court in the appointment of a receiver, and it is deemed altogether useless to cite authorities in justification of the order made by the court. The bill filed by the appellee the Farmers' Loan & Trust Company made out a plain case of equitable cognizance, and one in which the court was authorized to take possession of the property for the security of the creditors of the railway company and the protection of its stockholders.

The only question, then, which properly arises upon the specifications of error is whether the appellant, by virtue of his purchase of the Waco & Northwestern Division of the Houston & Texas Central Railway, September 8, 1888, is entitled to the net earnings resulting from the operation of the railway by the receiver from the date of his purchase to the final sale of the property, September 3, 1895. As to the period embraced between the date of appellant's purchase and the filing of the bill in this suit, April 6, 1889, the report of the master, which was not excepted to, shows that no net earnings accrued from the operation of the Waco & Northwestern Division. Hence the claim to net earnings for that period has been properly abandoned. The master further reports that a considerable amount of net earnings was derived from the operation of said division between April 6, 1889, and September 3, 1895, and, at the date of the report there remained of net income in the hands of the receiver, or in the registry of the court, the sum of $362,855.37. To the income thus accruing between April 6, 1889, and September 3, 1895, the appellant asserts a right superior to that claimed by the appellees, who are in part the owners, and partly the representatives of the owners, of the first mortgage bonds, secured by the mortgage which was foreclosed in this suit.

It is conceded that the net earnings, superadded to the proceeds of the sale of the Waco & Northwestern Division, are not sufficient

to discharge the principal of the bonds and accrued interest. The record discloses that for several years prior to the filing of the bill in this suit the property was in the hands of a receiver duly appointed by the court in other causes then pending, which embraced the entire property of the Houston & Texas Central Railway Company. Upon the day that the bill was filed, an order was made, pursuant to its prayer, appointing a receiver in the suit, who continued in possession as receiver of the Waco & Northwestern Division, and such receivership went on until the property was finally sold. It is thus seen that the Waco & Northwestern Division of the Houston & Texas Central Railway was in the sole and exclusive possession of receivers, duly appointed by the court in foreclosure proceedings, throughout the entire period for which net earnings are claimed by the appellant. Neither the appellant nor the railway company was in possession of the property a single day during the period mentioned, nor did either have aught to do with the management and operation of the railway. Therefore the Texas cases cited by counsel for the appellant as to the rights of a mortgagor in possession under an ordinary trust deed, or his right under such a deed to demand the premises from a mortgagee who has unlawfully acquired possession (Silliman v. Gammage, 55 Tex. 369, Loving v. Milliken, 59 Tex. 427, Edrington v. Newland, 57 Tex. 633, and others of similar type), are without application to the facts of this case. The mortgage which was executed by the Houston & Texas Central Railway Company to the appellee the Farmers' Loan & Trust Company, as trustee, expressly authorized the trustee, upon the failure of the railway company to pay any part of the interest or principal of the bonds when the same should become due and payable, and for 60 days after having been demanded, to take possession of the railway, operate and manage the same, and receive the revenue and income thereof, and apply the surplus to the payment of the interest and principal of all the matured outstanding bonds. And the trustee was further empowered, upon the request of the holders of one-fifth in amount of the outstanding bonds, in case of default in the payment of any part of the interest due on the bonds, "to enter upon and take actual possession, with or without entry or foreclosure, of said railway and property herein described, and all and singular each and every part and parcel thereof, and assume its management, until the arrears of both principal and interest be paid, or the property sold as herein prescribed, receiving the rents, revenues, and income thereof, and applying them in the same manner as above stated." And by the following clause of the mortgage the discretionary right of the railway company to appropriate the income of the property was restricted to the time when default should be made in the payment of the interest or principal of the bonds: "It is, however, expressly agreed that the said party of the first part [referring to the railway company] may dispose of the current net revenues and income of all the said property and railway hereby conveyed, in such manner as it shall deem best, until default shall be made in the payment of the interest or principal of said bonds, or of any one or more of them." The railway company having defaulted in the payment of the in-

terest, the trustee resorted to the courts for the more effectual protection of the rights of the beneficiaries under the mortgage, and upon its application the property was withdrawn from the possession of the railway company, and placed under the control of the court.

In view of the provisions of the mortgage and the uninterrupted possession of the railway by the receiver from the filing of the bill to its final sale, we confess our inability to understand how the appellant can justly assert a claim to the net income accruing during the receiver's control and management of the property. Surely, the railway company itself could not have preferred such claim, because, having made default in the payment of interest, it was debarred by the very terms of its contract. The appellant, in that respect, has no right superior to that of the railway company. He purchased the property subject "in all things" to the lien of appellees' mortgage, which secured to the bondholders, as we have seen, the net income of the property, upon default by the railway company in the payment of interest. We have, then, before us a case where the contingency contemplated by the parties has occurred which authorized the trustee of the bondholders to act. A receivership was the result of such action, and we are clearly of opinion that the net income derived from the operation of the railway by the receiver should be appropriated to the payment of the debt, principal and interest, for the security of which the mortgage was executed. The rule announced is consistent with reason, and finds support in judicial decisions. It must be borne in mind that we are here treating of net income; the question of preferential claims arising out of expenses incurred, equipment supplied, betterments made, and other kindred demands, not being involved. The issue is solely between the bondholders and one who purchased the property under a junior mortgage, subject to their rights. The circumstances which determine the respective rights of the mortgagor and mortgagee to the earnings of the property mortgaged are stated by the supreme court in several cases. Thus, in Dow v. Railroad Co., 124 U. S. 654, 8 Sup. Ct. 674, says the court:

"It is well settled that the mortgagor of a railroad, even though the mortgage covers income, cannot be required to account to the mortgagee for earnings, while the property remains in his possession, until a demand has been made on him therefor, or for a surrender of the possession under the provisions of the mortgage."

In concluding the opinion, at page 656, 124 U. S., and at page 675, 8 Sup. Ct., it is further said:

"Under these circumstances, as there are no current expense creditors claiming the fund, we are satisfied that the money is to be treated as income covered by the mortgages, and should be paid to the trustees, to be held as part of that security."

See Sage v. Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887, and authorities there cited.

It is said by Mr. Justice Woods, speaking for the court in Teal v. Walker, that:

"The American cases sustain the rule that so long as the mortgagor is allowed to remain in possession, he is entitled to receive and apply to his own use the income and profits of the mortgaged estate; and, although the mortgagee may have the right to take possession upon condition broken, if he does not exercise the right, he cannot claim the rents; if he wishes to receive the rents, he must take means to obtain the possession." 111 U. S. 249, 250, 4 Sup. Ct. 424.

And at pages 250, 251, 111 U. S., and at page 425, 4 Sup. Ct., it is further said:

"Chancellor Kent states the modern doctrine in the following language: 'The mortgagor has a right to lease, sell, and in every respect to deal with the mortgaged premises as owner so long as he is permitted to remain in possession, and so long as it is understood and held that every person taking under him takes subject to all the rights of the mortgagee, unimpaired and unaffected. Nor is he liable for rents, and the mortgagee must recover the possession by regular entry by suit before he can treat the mortgagor, or the person holding under him, as a trespasser.' 4 Kent, Comm. 157. See, also, Bridge Co. v. Heidelbach, 94 U. S. 798; Clarke v. Curtis, 1 Grat. 289; Bank v. Arnold, 5 Paige, 38; Hunter v. Hays, 7 Biss. 362, Fed. Cas. No. 6,906; Souter v. Railroad, Woolw. 80, 85, Fed. Cas. No. 13,180; Foster v. Rhodes, 10 N. B. R. 523, Fed. Cas. No. 4,981. The authorities cited show that, as the defendant in error took no effective steps to gain possession of the mortgaged premises, he is not entitled to the rents and profits while they were occupied by the owner of the equity of redemption."

The same rule obtains in the jurisprudence of Texas, as the following extract from Giles v. Stanton, will disclose:

"The mortgagees under this mortgage," says the court, "had no lien upon the earnings of the road while it remained in the hands of the company. * * * The lien of the mortgage upon the earnings of the railway depended solely upon the terms of the mortgage, and until the trustee took some steps authorized by the mortgage to appropriate the earnings no lien attached to the earnings. * * * By the terms of the mortgage the company was to remain in possession of the road, and had the right to operate the same, and to appropriate the earnings and income. Upon default in the payment of interest continuing for six months, the trustee was empowered to take possession of the railway, and operate it, applying the net earnings to the satisfaction of the interest, or he might sue to foreclose the mortgage; and if such default continued for twelve months, the trustee was authorized to sue to foreclose the mortgage. The trustee did not demand nor take possession of the road, and took no steps towards foreclosing the mortgage until the 18th day of June, 1891, when the plea of intervention was filed. It follows that the lien of the mortgage did not attach to the earnings of the road in the hands of the receiver which were earned before the date of the filing of the intervention; but from that time the lien of the mortgage attached to such earnings, subject to the expenditures and claims which by law were given a preference over it." 86 Tex. 627, 26 S. W. 618.

The lien of the mortgage attached to the earnings certainly from the date of filing the bill and appointing the receiver in this suit, and the net earnings subsequently acquired are properly attributable to the payment of the principal and interest of the mortgage debt. Such was the ruling of the circuit court, and in it there was no error. The decree appealed from should be affirmed, and it is so ordered.