**WOLF et al. v. SCOTT et al.   (No. 8317.)**

(Court of Civil Appeals of Texas. Galveston. April 27, 1923.)

1. Adverse possession ⏀73—Patent "color of title" within three-year limitation; "title."

One claiming under a patent issued by the state is claiming under title or color of title within the three-year statute of limitation regardless of whether the state owned the land at time the patent was issued or whether the patent was issued to the person entitled to receive the grant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Color of Title; Title (to Property).]

2. Boundaries ⏀33—In absence of proof to contrary, assumed that surveyor's stakes were reasonably permanent and existed seven years afterward when adjoining survey made.

In absence of proof to the contrary, it must be assumed that stakes placed by a surveyor to mark corners of a survey were of such kind as to have been of reasonable permanency, and it is fair inference that they were in existence when adjoining survey was made seven years afterwards and were the stakes called for in field notes of that survey.

3. Boundaries ⏀40(1) — That surveyor's stakes were not in existence after 48 years held not to require holding as matter of law that line was unmarked when adjoining survey made.

The fact that a surveyor's corner stakes locating a survey were not in existence 48 years

after being placed, *held* not to require holding, as a matter of law, that when adjoining survey was made seven years later the line was an unmarked prairie line.

Appeal from District Court, Brazoria County; W. S. Sproles, Special Judge.

Trespass to try title by W. F. Scott and others against Oscar J. Wolf and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

W. L. Shumate and Williams & Nuthe, all of Galveston, and A. R. Rucks, of Angleton, for appellants.

A. E. Masterson, of Angleton, Hill & Hill, of Houston, and Lewis H. Follett, of Angleton, for appellees.

PLEASANTS, C. J. This suit was brought by appellees against appellants in the form of an action of trespass to try title to a tract of 28¼ acres of land, a part of A. C. H. and B. survey No. 2 in Brazoria county.

The appellants, who claimed separate portions of the land in controversy, filed separate answers containing general denial, plea of not guilty, and pleas of limitation of three, five, and ten years. As developed upon the trial, the main issue in the case was one of boundary between A. C. H. and B. survey No. 2 and the H. Kempner survey in Brazoria county.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiffs.

The record shows that plaintiffs claimed under a regular chain of transfers from the patentees of the A. C. H. and B. survey, and defendants claimed under a regular chain of transfers from the patentee of the H. Kempner survey. The trial court found from the undisputed evidence that the land in controversy was a part of the A. C. H. and B. survey, and also held that issues of three and five years' limitation were not raised, and only submitted to the jury the issue of ten years' limitation. No complaint is made by appellants of the finding of the court upon the issue of boundary, nor of the finding of the jury upon the issue of ten years' limitation.

Under appropriate assignments and propositions it is very earnestly contended that upon the undisputed evidence judgment should have been rendered in favor of appellants upon their plea of three years' limitation.

The evidence shows that the A. C. H. and B. survey was surveyed in 1875 and the H. Kempner survey in 1882, and that the Kempner was patented in 1889 and the A. C. H. and B. in 1891. The undisputed evidence further shows that Dr. A. Sundt, from whom appellants Wolf and Arto purchased, had prior to his sale to these appellants held exclusive adverse possession of the land sold to said appellants for more than three years, claiming under a regular chain of conveyances from the patentee of the H. Kempner survey. The evidence as to the three years adverse possession of the appellant Pendleton, who claims under a regular chain of transfers from the patentee of the H. Kempner, is not conclusive, but is sufficient to raise that issue.

[1] The contention of appellants is based upon the well-settled proposition of law that one claiming under a patent issued by the state is claiming under title or color of title in the purview of the three years' statute of limitation regardless of whether the state owned the land at the time the patent was issued or whether the patent was issued to the person entitled to receive the grant. Grigsby v. May, 84 Tex. 240, 19 S. W. 343; Burnham v. Oil Co., 108 Tex. 555, 195 S. W. 1139. The soundness of this proposition cannot be questioned, but its application in a particular case manifestly depends upon whether the land in controversy is included within the boundary fixed by the title or deed under which the party invoking the statute of limitation claims.

The boundary line in controversy in this case is the south boundary line of the A. C. H. and B. survey, which is also the north line of the Kempner survey, according to the call in the field notes in that survey. The true location of this line, as shown by the evidence and established by the judgment of the trial court, places the land in controversy on the A. C. H. and B. survey, as claimed by the appellee. Appellants make no complaint of this finding of the trial court, but they contend that the land is also within the boundaries of the Kempner survey, as that survey was originally located and is described in its original field notes and the field notes contained in the patent to Kempner.

This claim of a conflict in the two surveys as originally located is based upon the assumption that the south line of the A. C. H. and B. survey, which is called for in the field notes of the Kempner survey, was at the time the later survey was made an unmarked prairie line, and therefore the call for such line must give way to the call for course and distance, and this will place the north line of the Kempner survey a sufficient distance north of the south line of the A. C. H. and B. survey to include the land in controversy.

We do not think the facts in this case sustain appellants' contention that the south line of the A. C. H. and B. survey was an unmarked line at the time the Kempner survey was located.

The field notes of the A. C. H. and B. survey call for a stake at its southeast and southwest corners respectively. The field notes of the Kempner survey, which was located seven years after the A. C. H. and B. survey have the following calls for the south

corners and line of the A. C. H. and B. survey:

"Thence north along the east line of the section 37 and 40 H. T. & B. R. R. 1,928 varas to a stake for corner at the southwestern corner of section 2, A. C. H. and B. Thence east 1,796 varas along the southern line of said section 2 to a stake for corner."

This call for the distance along the south line of the A. C. H. and B. corresponds with the call for length of that line in the field notes of that survey.

In discussing the question of whether a prairie line marked only with a stake will be regarded, as sufficiently marked to control a call for course and distance, our Supreme Court, in the case of Thatcher v. Mathews, 101 Tex. 122, 105 S. W. 317 says:

"The line as actually run and the corners as actually established when consistent with other locative calls fix the true boundaries of the survey. The locations of such corners may be proved by any admissible evidence sufficient to lead to a belief of the fact. It may be that surveyors are careless in setting stakes at corners in a prairie where there are no natural objects to mark their exact locality, or that it is customary with them to use a stake for marking corners of a very unstable character. Yet, in the absence of proof to the contrary, it must be presumed that they have done their duty, and have marked the corners with some object of reasonable permanence. Where a stake is once placed, it fixes the corner as conclusively as if marked by natural objects. Owing to the fact that it may be removed or obliterated, its location may be more difficult of proof; but, if proved, it fixes the corner with the same certainty as where it is marked by a permanent object.

"The Court of Civil Appeals in their certificate cite us to the case of Mann v. Taylor, 49 N. C. 272, 69 Am. Dec. 750. * * * But, when the court says 'a stake is an imaginary point,' we do not concur. When the surveyor says a stake, it must be presumed he means an *actual stake, which is a very real object.* * * *

"In Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304, Mr. Justice Smith in a well considered and very elaborate opinion lays down the rules which should govern in a case of this character, as follows: In case of conflicting calls, the order of dignity and control are: (1) Natural objects; (2) artificial objects; and (3) course and distance. That is to say, calls for course and distance must, in case of conflict, yield to calls for natural objects and to artificial objects, among which he expressly mentions 'stakes.' The principles so announced have since prevailed in this court without any important modification."

[2, 3] In the absence of proof to the contrary it must be assumed, as said by Judge Gaines in the Thatcher Case, supra, that the stakes placed by the surveyor to mark the corners of the A. C. H. and B. survey were of such kind as to have been of reasonable permanency and it is fair inference that these stakes were in existence at the time the Kempner survey was made and were the stakes called for in the field notes of that survey. The fact that they are not in existence now 48 years after they were placed there will not justify the holding, as a matter of law, that at the time the Kempner survey was made the south line of A. C. H. and B. survey was an unmarked line.

We have considered this question so far under the theory that the rule that an unmarked prairie line must give way to a call for course and distance as originally laid down in Gerald v. Freeman, 68 Tex. 201, 4 S. W. 256, applied broadly to all prairie lines which were without marks or monuments at their beginning or terminus or somewhere along the line called for. Later decisions have modified this rule or rather placed a different interpretation upon the holding in the Gerald Case. In the case of Hermann v. Thomas, 168 S. W. 1037, loc. cit. 1048, this court in discussing this question says:

"It has been held that a call for course and distance should not be subordinated to a call for an unmarked line which could not, of itself, be ascertained, except by running course and distance from an established point. Gerald v. Freeman, 68 Tex. 201, 4 S. W. 256; Johnson v. Archibald, 78 Tex. 96, 14 S. W. 266, 22 Am. St. Rep. 27; Robertson v. Mooney, 1 Tex. Civ. App. 379, 21 S. W. 143.

"The leading case of Gerald v. Freeman, announcing this rule, however, has been subsequently explained, and the general rule thus announced somewhat limited, and it now seems to be the settled law that when the unmarked line of an adjacent survey is called for, and when from the other calls of such adjacent survey the position of such unmarked line can be ascertained with accuracy, and there is an absence of evidence as to how the survey was actually made, and there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, there is no reason why the survey line should not be given the dignity of an artificial object and prevail over course and distance. Maddox v. Fenner, 79 Tex. 279, 15 S. W. 237; Wood v. Cahill, 21 Tex. Civ. App. 38, 50 S. W. 1071; Goodson v. Fitzgerald (Civ. App.) 135 S. W. 696; State v. Russell, 38 Tex. Civ. App. 13, 85 S. W. 288; Steusoff v. Jackson, 40 Tex. Civ. App. 328, 89 S. W. 445; Davis v. Baylor (Sup.) 19 S. W. 523; Langerman v. Nichols (Civ. App.) 32 S. W. 124; Coleman Co. v. Stewart (Civ. App.) 65 S. W. 383; Shindler v. Lutcher (Civ. App.) 107 S. W. 941; Baker v. Light, 80 Tex. 627, 16 S. W. 330. This doctrine was applied in the case of Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317, where there was a call for 13,400 varas to a stake in prairie. The stake had disappeared. It was held to be an artificial object, and, if the place where it was originally located could be established, the call for distance should yield to it; and it was held proper to extend the line an additional 1,200 varas to reach the point where the stake had been originally located. To the same effect is Wm. M. Rice Institute v. Giesecke (Civ. App.) 154 S. W. 612."

Regardless of which rule is applied in this case, we conclude that the evidence does not warrant the holding that the south line of A. C. H. and B. was an unmarked line at the time the Kempner survey was made. This conclusion defeats appellants' contention that there is a conflict in the two surveys, and appellants holding under the junior title could prescribe under the three years' statute of limitation.

It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.