**STATE  v.  GULF OIL CORP. et al.**

No. 3123.

Court of Civil Appeals of Texas.

Waco.

Jan. 28, 1954.

Rehearing Denied Feb. 18, 1954.

John Ben Shepperd, Atty. Gen., Thomas Black, Asst. Atty. Gen., for appellant.

W. O. Bowers, Jr., and Orgain, Bell & Tucker, Beaumont, Graham Bruce, Orange, Archie D. Gray, Joe M. Green, Jr., Fred A. Lange, Houston, for appellees.

McDONALD, Chief Justice.

This is a Trespass to Try Title suit covering an alleged vacant strip of 108 acres, purportedly lying between the South line of the William Stephenson League and the North line of the William Allen Survey in Orange County.

The issue is whether the original surveyor of the Wm. Allen Survey placed its N.E. corner in the South line of the Wm. Stephenson League (in which event there is no vacancy and the 108 acres belong to appellees) ; or whether he placed the N.E. corner of the Wm. Allen Survey at a point generally South of the South line of the Wm. Stephenson League (in which event there is a vacancy, and as such belongs to appellant State of Texas).

It is believed the schematic diagram below will aid in understanding the contentions of the parties.

The original field notes of the Wm. Allen Survey as made and certified by O. H. Delano *call to begin at the Southwest corner of a survey made for John Stephenson* (Point A on diagram) *and ran N. 44 deg. 40 min. West 4020 varas "a stake in mound"* for the Northeast line and the N.E. corner of the Allen Survey.

The SW corner of the John Stephenson Survey is well known and is an agreed point. Commencing at this point and pursuing a course 44 deg. 40 min. West for 4020 varas will bring us to Point B on diagram, which is the point that appellant claims to be the N.E. corner of the Wm. Allen Survey, as originally set by Delano, when he surveyed the tract in 1838.

Appellees contend that Point C (diagram) is the N.E. corner of the Wm. Allen Survey as set by Delano when he surveyed the tract in 1838, although Point C is a distance of some 4500 varas from Point A along the prescribed course.

Trial was to a jury, which found that the original surveyor of the William Allen Survey placed its N.E. corner in the South line of the William Stephenson League (Point C), which finding eliminated the claimed vacancy.

Judgment was entered for appellees, and the State of Texas appeals to this court on 7 Points, the first 6 of which contend that there was no evidence or insufficient evidence to sustain the finding of the jury.

The question for determination therefore is whether or not there was sufficient com-

petent evidence to sustain the jury's finding that the N.E. corner of the Wm. Allen Survey was located by the original surveyor in the S. line of Wm. Stephenson League.

A review of the record is necessary.

Both appellant and appellees presented a surveyor witness, who had made surveys in an attempt to correctly locate the N.E. corner of the Wm. Allen Survey. Surveyor Foyle testified for appellant and locates the N.E. corner at Point *B* on the diagram 4020 varas from the point of beginning (Point A). Surveyor Compton testified for the appellees and locates the N.E. corner at Point *C*.

The original field notes of the Wm. Allen Survey call to *"begin at the SW corner of a Survey made for John Stephenson."* (A common corner between the Wm. Allen and the John Stephenson Surveys and recognized by all surveyors in the vicinity.) *"Thence N 44 deg. 41 min. W at 1000 varas a marsh 200 varas wide at 1900 varas Gum Pond 120 varas wide at 2320 varas Gum Slew 50 varas wide at 2450 varas open prairie at 4020 varas stake in mound."*

While the original field notes of the Wm. Allen Survey called for it to commence at the S.W. corner of the John Stephenson Survey—the original field notes of the John Stephenson Survey called for that survey to commence at the N.E. corner of the Wm. Allen Survey at a post in mound "Thence S. 44 E. with said Survey 4415 varas to the SE corner of this survey."

The Allen Survey was shown to have been surveyed in 1838 and the John Stephenson Survey field notes are dated in 1844, with no recital as to the time the survey was actually made. However, since the Stephenson field notes called to commence at the N.E. corner of the Allen, it is obvious (and appellant's witness surveyor Foyle so testified) that it is doubtful that the Stephenson was a junior survey.

Delano, who originally surveyed the Wm. Allen in 1838, in 1840 surveyed a division of the John Stephenson Survey having to do with partitioning his estate upon his death,

in Tract 4, makes its 2nd call: *"for the W corner of the original John Stephenson Survey which is the N.E. corner of the Wm. Allen Survey."* These field notes were prepared by Delano—the same surveyor who surveyed the Wm. Allen two years before. Witness Compton testified that surveyor Delano must have known where he was. Elijah Allen, a son of Wm. Allen, was one of the Commissioners making the partition. John Stephenson was a son-in-law of Wm. Allen. Wm. Stephenson was a son of John Stephenson. All of these people were close relatives—lived close together—and certainly knew where their respective property lines were.

The endorsement on the original Certificate under which the Wm. Allen Survey was located and surveyed reflects "Surveyed on the within certificate 14¾ labors of land * * * in the County of Jefferson and *being bounded by marshes and other surveys,* the remaining quantity could not be obtained". To be bounded by *other surveys* it would of necessity have to be bounded on the N. by the Wm. Stephenson.

The Certificate was for 1 League and Labor of land. The Wm. Allen heirs agreed that the balance of the land to which they were entitled under the certificate might be surveyed in Milam County. It is certainly a strong circumstance that had *any* further land been available between the Allen and the Wm. Stephenson Surveys they would have taken it there, instead of in Milam County.

As required by law, in 1840, surveyor Delano, who made the Wm. Allen Survey in 1838, filed with the State Land Commissioner a map showing the then surveyed land in Jefferson County. It is noted that this map shows that the Wm. Allen Survey joins the Wm. Stephenson League and that the N.E. corner of the Wm. Allen joins the N.W. corner of the John Stephenson and that this corner is in the S. line of the Wm. Stephenson League.

The evidence reflects that all are in agreement as to the location of the S. line of Wm. Stephenson League and that it is

marked on the ground by the Mansfield Ferry Road that has been there for many years.

Witness Compton testified that to reach the S. line of the Wm. Stephenson Survey you have to extend the Allen N.E. line 515 varas beyond the call distance of 4020 varas but not beyond the other call as shown by the endorsement on the 1838 Certificate, viz.: "being bounded by other surveys", and the 1840 map which shows that the Wm. Allen N. line adjoins the Wm. Stephenson S. line.

Further, the Wm. Allen field notes call for a *"stake in corner"* at the 4020 vara distance.

This called for an artificial monument. Surveyor Compton testified he did not find the stake in mound at the 4020 vara distance —and surveyor Foyle testified that he didn't either—and that he didn't even try to find it since he was not interested in its location.

From Foyle's testimony he ran only the course and distance portion of this call of the Wm. Allen, disregarding the portion calling for "stake in mound", which was an important part of the call.

Surveyor Compton testified that if you have a call for course and distance, the terminus of which is in a stake in mound, and you cannot find the stake in mound at that distance, one must look for further evidence such as what other surveyors had said about the stake, because in most instances the work of other surveyors leads you back to the correct corners. Surveyor Foyle said that it is of *prime importance* to a surveyor when a stake is called for at the end of a line, but cannot be located, to ascertain, if possible, the location of that stake, since the stake would control the call for distance. This testimony is inconsistent, however, with what Foyle actually did on the ground.

The evidence further shows that the N. line of the Wm. Allen Survey at 4500.7 varas is marked by an old fence, while there is nothing at the 4020 vara distance.

*Witness Hollis testified that he saw an old stake which was pointed out by Dan Patillo, now deceased, as the N.E. corner of the Wm. Allen Survey, and that it was at a point in the side of the Mansfield Ferry Road.*

*Witness Peveto testified that Surveyor Noguess, in 1910, found an old cypress stake when he, Peveto, was present, and that this stake was at the same place that the general reputation in the neighborhood placed the N.E. corner of the Wm. Allen Survey; and that this stake was just North of the Mansfield Ferry Road and in the Wm. Stephenson line. The above evidence is in this record uncontradicted and undisputed.*

In 1844, subsequent to Wm. Allen's death, a survey of his lands for partition purposes was made by Surveyor Isaac Garner, who made the original survey of the John Stephenson Survey. A re-run of this survey finds the N.E. corner of the lands to be partitioned for Allen's widow to be the N.E. corner of the Allen Survey—and which is placed in the S. line of the Wm. Stephenson League.

Further, following the next call of the Wm. Allen Survey from the N.E. corner of the Wm. Allen Survey "S. 88 deg. 40 min. W. at 730 varas the edge of woods at 1800 varas the Neches Marsh a stake in mound." If this line is run along the S. line of the Wm. Stephenson Survey the passing call and the terminus correspond, whereas if it be run from the point 4020 varas from the point of beginning, the timber is not touched, and the terminus conflicts with uncontradicted evidence as to the location of the N.W. corner.

Further, the record reflects that the G. C. & S. F. Ry. Survey No. 1, lying W. of the Wm. Allen Survey, surveyed in 1882 by surveyor Cleveland, calls to begin on the W. line of the Wm. Allen Survey and thence N. 12 East 898 varas to stake set in Marsh, *"the Northwest corner of the Wm. Allen Survey."*

This evidence shows, and surveyor Foyle admitted, that surveyor Cleveland, in 1882, had found a *stake* marking what he called the N.W. corner of the Wm. Allen Survey, and that the same was in the S. line of the Wm. Stephenson League.

Several early deeds were introduced in evidence, subdividing the Wm. Allen Survey, which call for its N. line to be the S. line of the Wm. Stephenson Survey.

Several old-timer witnesses testified that they knew the Wm. Allen and Wm. Stephenson Surveys adjoined.

■ Our Supreme Court, in Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317, lays down the applicable rule of law for fixing the true boundary of a survey, at a date subsequent to its original survey. That rule is to follow the footsteps of the original surveyor. In following the footsteps of the original surveyor, if conflicts in calls develop, the order of dignity and control is: 1) Natural Objects, 2) Artificial Objects, 3) Course and Distance. This means that calls for Course and Distance must, in case of conflict, yield to calls for Artificial Objects. It is expressly held that a stake is an Artificial Object, and its mention cannot be disregarded. When a stake is placed it fixes a corner as conclusively as if marked by a natural object. Since a stake may be removed or obliterated, its location may be more difficult of proof, *but* if proved it fixes the corner with certainty. The location of such corners may be proved by any admissible evidence sufficient to lead to a belief of the fact.

■ Temple Lumber Co. v. Felts, Tex. Civ.App., 260 S.W. 228, no writ, cites and is in accord with the Matthews case—and affirms the doctrine that the accounted for previous location of Artificial Objects called for in field notes control calls for course and distance. Further, the court in this case gave effect to evidence of general reputation as going to sustain the verdict of the jury. In the case at bar we have uncontradicted testimony as to general reputation as to the location on the ground of the Northeast corner of the Wm. Allen Survey.

■ Muldoon v. Sternenberg, 139 Tex. 22, 161 S.W.2d 783, in a fact situation analogous to the case at bar, affirms the rule that in case of conflict, calls for Artificial Objects control calls for Course and Distance, and holds that *where calls are not merely for course and distance alone, but for stakes as well, and when it is found that such Artificial Objects were not at the points indicated by the calls for course and distance—that parol evidence* is always admissible to locate the monuments called for in the field notes. The court further holds that there is no particular rule as to the character of evidence which may be considered in locating the objects called for in the field notes.

■ The following cases are in accord: Snyder v. Magnolia Petroleum, Co., Tex. Civ.App., 107 S.W.2d 603, writ dis.; Southern Pine Lumber Co. v. Whiteman, Tex. Civ.App., 104 S.W.2d 635, writ dis.; Wm. M. Rice Institute for Advancement of Literature, Science and Art v. Gieseke, Tex. Civ.App., 154 S.W. 612, no writ; Wolf v. Scott, Tex.Civ.App., 253 S.W. 905, no writ; Davis v. Woolverton, Tex.Civ.App., 184 S. W.2d 659, writ ref. The last named case further holds that the Appellate Court is bound by the jury's verdict in establishing a corner—or the location of Artificial Objects—if there is *any* legal evidence to support it.

■■ Turnbow v. Bland, Tex.Civ.App., 149 S.W.2d 604, writ dis., holds that titles to land are not to fail merely because old markers have disappeared, or because it may be difficult to trace the footsteps of the surveyor. Every rule of evidence for guidance in boundary cases is for the purpose of ascertaining the true location of the line in dispute, by which is meant the place at which the original surveyor ran the line. After many years have passed and time has destroyed the evidence left by the original locator, necessity requires that we resort to *any evidence* tending to establish the place of the original footsteps which meets the requirement that it is the best evidence of which the case is susceptible.

■ Cockrell v. Work, Tex.Civ.App., 94 S.W.2d 784, writ dis., holds that statements of third parties now dead, when pointing out boundaries, are admissible in evidence—and that ancient boundaries may

be proven by evidence of common reputation.

Houston Oil Co. v. Choate, Tex.Civ.App., 215 S.W. 118, affirmed by Sup.Ct., 232 S.W. 285, favorably considered in evidence the surveyor Delano's 1840 map of Jefferson County, which shows the Wm. Allen and the Wm. Stephenson Surveys to join.

As we view this case, it resolves itself as follows: The object is to trace the footsteps of the original surveyor in fixing the true Northeast corner of the Wm. Allen Survey. *The call is from an agreed point (Point A, Diagram, supra), a specified course and distance to a stake in mound.* There is no stake to be found at the point located by the course and distance specified. A summary of the evidence admitted by the Trial Court which fixed the location of the stake in mound as placed by the original surveyor in the South line of the Wm. Stephenson League, and at the point found by the jury, is: The original surveyor endorsed his original field notes "bounded by marshes and other surveys"; the original surveyor, in subdividing the Wm. Allen Survey two years later, fixed its North line at the South line of the Wm. Stephenson League; the Land Certificate Wm. Allen received was for more land than was surveyed out in Jefferson County and the deficiency was taken in Milam County by Allen's heirs,—surely, they would have taken all land possible where they lived had more been available; the original surveyor in 1840 filed a map of the lands in question with the State Land Commissioner, which shows the North line of the Wm. Allen Survey to join the South line of the Wm. Stephenson League; there was an old fence in evidence running East and West at the 4500 vara distance, while there is nothing at the 4020 vara distance. Elderly witnesses testified that a stake had been pointed out to them by older persons now dead when they were young, as being the N.E. corner of the Wm. Allen Survey—and that it was at a point in the S. line of the Wm. Stephenson League; a surveyor, in 1910, found a stake at the same place that general reputation placed the N.E. corner of the Wm. Allen Survey, and that location was in the Wm.

Stephenson South line; a stake was found at the N.W. corner of the Wm. Allen Survey which was in the South line of the Wm. Stephenson League; passing calls for an island of timber conform with the N.E. corner located at the 4500 vara distance, but will not at the 4020 vara distance; the terminus conflicts at the 4020 vara distance, but conforms to other evidence at the 4500 vara distance; ancient deeds and old-timer witnesses confirm that the Wm. Allen Survey and the Wm. Stephenson League adjoined; finally, the surveyor Compton fixed the N.E. corner of the Wm. Allen Survey in the South line of the Wm. Stephenson League at the point contended for by appellees, and at the point found by the jury to be the location at which the original surveyor placed it.

The location of the N.E. corner of the Wm. Allen Survey is governed by Delano's original survey in 1838 if his footsteps can be traced. Appellee's surveyor Compton traced his footsteps, and located the corner in the South line of the Wm. Stephenson League, and at the point corroborated abundantly by the evidence set forth. Appellant's surveyor Foyle testified that he ran the *course and distance* called for in the field notes and not finding the stake at that point made no further effort to find it. Hence Foyle has not even attempted to follow the footsteps of Delano, but has arbitrarily located the N.E. corner at the terminus of the calls' course and distance.

We believe that the evidence in this case establishing the footsteps of the original surveyor is about as certain and satisfactory as could be reasonably expected under the circumstances, and after the lapse of 115 years. Therefore, applying the rules of law announced, we hold there is ample admissible evidence to sustain the findings of the jury.

Appellant's 7th Point contends that the Trial Court erred in overruling its objection to the Court's Charge as submitted to the jury, and in refusing to submit its requested instructions and Special Issue, viz.: "Do you find from a preponderance of the

evidence that the Wm. Allen Survey cannot be located on the ground by the field notes of the original surveyor? Answer: 'It can, or It cannot'. If you answer 'It can', then you are instructed that in arriving at your answer to the following Special Issues, you are not to consider the calls in the field notes of the surveys adjoining the Wm. Allen Survey."

It is our view that the issues submitted by the Trial Court are the controlling issues as made by the pleadings and evidence (See Rule 279, Texas Rules of Civil Procedure); and that the requested charge was erroneous. The requested charge would have withdrawn from the consideration of the jury all calls in adjoining surveys, no matter the circumstances under which they were made. This is counter to the holdings of our courts, supra.

All of appellant's Points are overruled, and the judgment of the Trial Court is affirmed.