MRS. EVA MULDOON, ET AL V. MRS. EMMA B. STERNENBERG ET AL.

No. 7834. Decided April 1, 1942.
Rehearing overruled April 29, 1942.
(161 S. W., 2d Series, 783.)

*A. M. Huffman, Hugh C. Cunningham,* and *Strong, Moore & Strong,* all of Beaumont, for plaintiffs in error.

On question of ambiguities and conflicts in calls in field notes. Gill v. Peterson, 126 Texas 216, 86 S. W. (2d) 629; Kirby Lbr. Co. v. Adams, 127 Texas 376, 93 S. W. (2d) 382; Petty v. Paggi Bros Oil Co. 254 S. W. 565.

*James F. Parker,* of Kountze, for defendant in error.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The parties will be designated in this opinion as they were in the trial court wherein the defendants in error, Mrs. Emma B. Sternenberg, a feme sole, and others were plaintiffs, and Mrs. Eva Muldoon, a feme sole, and others were defendants. The suit was in the form of an action of trespass to try title, but developed into one wholly of boundary, the controlling issue being that of the true location on the ground of the west line of the John A. Vickers league in Hardin County. The plaintiffs contend that the east line of the Hiram Barber survey and the west line of the John A. Vickers league are a common line, while the defendants contend that the west line of the Vickers is 1029 varas east of the east line of the Barber, and that the intervening land is a part of the George W. Eaton survey. Upon a trial before the court without the assistance of a jury the plaintiffs' contention was sustained and they were awarded all the land sued for. Upon defendants' cross action, in which they put in issue the title to the entire Eaton survey, they were awarded a recovery of all of said survey except that portion thereof which was recovered by the plaintiffs as a part of the Vickers league. The trial court's judgment was affirmed by the Court of Civil Appeals. 146 S. W. (2d) 254.

It is thought that the sketch inserted below will aid in an understanding of the contentions of the parties. It is not a part of the record and no attempt has been made to construct it according to scale, but it is inserted for purposes of illustration only.

The Vickers league was surveyed and titled in 1835 and the Barber survey was surveyed in 1869 and titled in 1870. The Eaton survey is an irregularly shaped tract of 631 acres surveyed in 1908. The defendants contend that the west line of the Vickers should be located on the dotted line shown on the sketch as the east line of the upper portion of the Eaton survey, while the plaintiffs contend that the west line of the Vickers should be located on the line shown on the sketch as the east line of the Barber. It is conceded by all parties that the east line of the Barber is well established as indicated by the sketch and the controversy centers about the question of whether the land in dispute is in the Vickers league, owned by plaintiffs, or the Eaton survey, owned by defendants. Of course, since the Eaton is a junior survey, if its field notes conflict with those of the Vickers league the former must yield.

By reference to the above sketch, it will be observed that two surveyors, Brown and Veatch, apparently worked in this section in 1835 surveying leagues for colonists. It would appear that they surveyed alternate sections. Brown surveyed the Nelson, Ellery and Burrell, and Veatch the Brooks, Vickery and Elliott. The field notes of the Nelson survey prepared by Brown on August 17, 1835, are as follows:

"The tract surveyed for the colonist O. C. Nelson is situated on the western bank of the Neches river, a stake was driven on said bank for the first corner of the survey for the said interested party, and it is his S. E. corner, (bearings).

"Thence west 10,000 varas a stake was driven establishing the second corner thereon, and it is the southwest one of said league.

"Thence north 2,500 varas were measured, a stake was driven, serving as the northwest corner of said league.

"Thence east 10,500 varas were measured to the S. E. corner of a survey on the western side of the Neches, which is the northeast corner of this survey, (bearings).

"Thence, descending the said river, on its various courses, until encountering the corner on which this survey was begun, thus completing the survey of the league of land which you commanded me to have surveyed."

The field notes of the Vickers survey prepared by Veatch on August 24, 1935, are as follows:

"The tract surveyed for the Colonist John A. Vickers is situated on the Western side of the Neches river, driving a stake on the northwest corner of Nelson's survey, and the first corner of this survey was established thereon; thence on the course to the west, 10,000 varas were measured, and a stake was driven, establishing the second corner thereon. Thence on the course to the South, two thousand, five hundred varas were measured, and a stake was driven, establishing the third corner thereon. Thence, on the course to the East, 10,000 varas were measured, and a stake was driven, establishing the fourth and last corner thereon, which is likewise the southwest corner of another survey. Thence North, 2,500 varas were measured on its boundary line until encountering the corner on which this survey was begun, thus completing the survey of the league of land which you commanded me to have surveyed."

The field notes of the Barber survey, prepared December 7, 1869, call for the east line thereof to adjoin the west line of the Vickers, although they disclose that the surveyor did not locate any marks of the west line of the Vickers at the time he established the east line of the Barber.

The Court of Civil Appeals affirmed the judgment of the trial court, holding that the issue of the location of the west boundary line of the Vickers league was simply one of fact, and that there was evidence supporting the fact conclusive of the trial judge that the Vickers league extended west to adjoin the Barber survey.

The northeast corner and the southeast corner of the Nelson league are definitely established, and there is no controversy with reference thereto. It is the theory of the defendants that the evidence shows conclusively that the surveyor, Brown, in preparing the field notes of the Nelson league established the northeast and southeast corners thereof on the ground and then constructed the other lines and corners thereof by protraction. They further contend that the evidence conclusively shows that the Vickers was an office survey, and that, therefore, it should be held as a matter of law that such leagues must be located on the ground by the course and distance calls in their field notes.

We cannot sustain this contention. The presumption obtains

that the lines of these surveys were actually run upon the ground by the surveyors. Ayers v. Lancaster, 64 Texas 305; Maddox v. Turner, 79 Texas 279, 15 S. W. (2d) 237; Groesbeck v. Harris, 82 Texas 411, 19 S. W. 850; Finberg v. Gilbert, 104 Texas 539, 141 S. W. 82; Texas Co. v. Andrada, 52 S. W. (2d) 1063 and authorities there cited. This latter case was affirmed in 126 Texas 388, 87 S. W. (2d) 1079.

The evidence in this case does not overcome that presumption as a matter of law, but, on the contrary, tends to support it. The field notes recite that stakes were driven at the various corners of both the Nelson and the Vickers leagues. The fact that two surveyors made the field notes to alternate leagues would suggest that they were actually surveying this territory, and besides, testimony as to old marked lines and stakes tended to support the presumption that the surveyors did their duty.

■ The principal contention of the defendants is presented in their first assignment of error, that being the assignment upon which the application for writ of error was granted. It is that parol evidence could not be resorted to for the purpose of establishing the west line of the Vickers league. The argument is based upon the theory that, since there was no conflict or ambiguity in the calls in the field notes of either the Nelson league or the Vickers league, such leagues should be located on the ground by the calls of their field notes. Defendants invoke the rule that, if the calls when applied on the ground correspond with each other, parol evidence as to objects not called for in the field notes is not admissible to vary them. That is a well established rule of boundary law. Johnson v. Archibald, 78 Texas 96, 14 S. W. 266, 22 Am. St. Rep., 27; Reast v. Donald, 84 Texas 648, 19 S. W. 795; Thompson v. Langdon, 87 Texas 254, 28 S. W. 931, and Gill v. Peterson, 126 Texas, 216, 86 S. W. (2d) 629. But it has no application here.

■ In the case last cited the opinion carefully points out that "parol evidence is admissible to show where on the ground a survey was actually made, * * * when the effort to apply the description to the ground gives rise to ambiguity," and that such evidence is not admitted to override the field notes, but as an aid in their interpretation, citing Wilson v. Girard, 111 Texas 253, 231 S. W. 1004. When an effort was made to apply the field notes of the leagues under discussion to the ground ambiguities were disclosed. The calls were not merely for specified courses and distances, but were for stakes as well,

and when it was found that such artificial objects were not at the points indicated by the calls for course and distance rendering parol evidence as to the true location of such stakes admissible. Parol evidence is always admissible to locate monuments called for in the field notes. Hughes v. Sandal, 25 Texas 162; Thatcher v. Matthews, 101 Texas 122, 105 S. W. 317; 7 Tex. Jur., Boundaries, Sec. 77, p. 235, and cases there cited.

The assignments before us do not present questions as to the admissibility of particular items of evidence, but merely present the broad question that none of such evidence was admissible because the land could be located on the ground by its field notes and because such evidence was not as to objects called for in the field notes. The evidence was offered in an effort to locate the artificial objects called for by the field notes, and the rule excluding parol evidence as to objects not called for in the field notes had no application. West Lumber Co. v. Goodrich, 113 Texas 14, 223 S. W. 183. There is no particular rule as to the character of evidence which may be considered in locating objects called for in the field notes.

■ We overrule the contention that there is no evidence in this record that the stakes called for as the northwest and southwest corners of the Vickers league were driven at the points found by the trial court, that is, at points which establish that the west line of the Vickers and the east line of the Barber is a common line. The witness Hyde, a licensed state surveyor, who went upon the ground in 1936 for the purpose of surveying the Barber survey and obtaining correct information with reference to the surrounding surveys, testified at great length with reference to the various lines which he ran in that vicinity. He testified that he found an old stake at about the point fixed by the trial court at the northwest corner of the Vickers and a rotten stake, still standing, at about the point fixed as the southwest corner hereof. He further testified to old lines which were consistent with the fact that such stakes were those called for in the original field notes of the Vickers league. There is no evidence in the record which would indicate that those stakes were placed there for any other purpose than the marking of the corners of the Vickers league. The trial court as the trier of facts concluded that they marked the corners of the Vickers league, and it cannot be said, as a matter of law, that the conclusion was not warranted.

It is elementary that, if they were the stakes called for in

the field notes, they determine the location of the corners, for calls for monuments, whether natural or artificial, are given priority over calls for course and distance. 7 Tex. Jur., Boundaries, Sec. 37, p. 166 et seq.

The judgment of the Court of Civil Appeals, which affirmed the judgment of the trial court, is affirmed.

Opinion adopted by the Supreme Court April 1, 1942.

Rehearing overruled April 29, 1942.