CRUMP et al. v. HUMBLE OIL & REFINING CO. et al.

No. 2258.

Court of Civil Appeals of Texas. Eastland.

June 26, 1942.

Rehearing Denied Oct. 2, 1942.

Chas. Gibbs, of San Angelo, for appellants.

R. E. Seagler, of Houston, and Ed M. Whitaker, of Midland, for appellees.

GRISSOM, Justice.

This is a suit in trespass to try title by Humble Oil & Refining Company against J. L. Crump, M. U. Finley, independent executor of the estate of D. J. Finley, deceased, George J. Greer, Barron Kidd, A. W. Cherry, W. T. Doherty, and W. F. Morris. The suit involved three tracts of land; the first tract was described in plaintiff's petition as being a part of Survey 37, Block AX, in Yoakum County, "beginning at a point in the east line of sec. 37 block AX, Public School Land, for the southeast corner this tract, said point being west 5050 varas from a 1¼" iron pipe marked '28–38–890' said pipe being the one called for as being the northeast corner of sec. 38, block AX Public School Land in the field notes of D. J. Finley Survey by Mr. Bandy;

"Thence north with the east line of sec. 37, a distance of 64.4 varas to a point for the northeast corner this tract, said point being on the south boundary line of sec. 892, Block D, John H. Gibson Survey, and in the center of an east and west graded highway;

"Thence north 89 deg. 53' West with the south line of said Block D and the center line of the graded highway 1621 varas to a point for the northwest corner this tract;

"Thence south 67.7 varas to a point for the southwest corner this tract;

"Thence East 1621 varas to the place of beginning."

The second tract was alleged to be a part of Survey 28, Block C-35, Yoakum County, beginning at the marked iron pipe above described, and the third tract was described as being out of Survey 29, Block C-35, Yoakum County, beginning at a point in the east line of Section 28 and west line of Sec. 29, Block C-35.

The court instructed a verdict for the plaintiff as to tracts two and three (of which no complaint is made by defendants), but submitted the case to the jury as to tract number one. The issues submitted and the jury's answers were as follows:

1. "Do you find from a preponderance of the evidence that at the time of compiling his final field notes of Survey 37, Blk. AX, the surveyor F. O. Aiken knew the true location on the ground of the line known in this case as Wood's County Line at the points called for in the said field notes of Sec. 37, Blk. AX?" The jury answered, "No."

2. "Do you find from a preponderance of the evidence that by the phrase 'N. B. Line of Gaines County', as used in his final field notes of Survey 37, Blk. AX, the surveyor F. O. Aiken meant the line known in this case as Wood's County Line?" The jury answered, "No."

3. "Do you find from a preponderance of the evidence that at the time of compiling his final field notes of Survey 37, Blk. AX, the surveyor F. O. Aiken located a line which he took to be the south line of Blk. D?" The jury answered, "Yes."

4. "Do you find from a preponderance of the evidence that such line so located by him as the south line of Blk. D, if any, was as far north as the center of the present road known as the County Road?" The jury answered, "Yes."

The court sustained plaintiff's motion to disregard the jury's answer to issues 1 and 2, as being contrary to the undisputed evidence, and, upon said allegedly undisputed evidence and answers to issues 3 and 4, rendered judgment for plaintiff. Defendants have appealed.

Defendants own an oil and gas lease executed by the Land Commissioner covering a narrow strip of land alleged to be a vacancy and to lie between the south line of Block D, John H. Gibson Survey, Yoakum County, now the center of a public road, and the north line of Survey 37, Block AX, near the Gaines County line. Plaintiff claims the alleged strip constitutes a part of Sec. 37, Block AX, Yoakum County, on which it has an oil and gas lease, and that the north line of Block AX

and the south line of Block D, center of the road, are the same line.

In order that the issues may be more readily understood, we will briefly recite the history of the surveys surrounding the tract in controversy. In doing so, where convenient, we will adopt portions of plaintiff's statement without quotation marks.

### Block D, John H. Gibson Survey

In 1879 certain land certificates issued to John H. Gibson were located in Yoakum and Terry Counties, and designated as Blocks D and DD, taking as identification therefor a connection 40 miles to the east. Later an actual survey was made by Twichell in 1892, and adopted and approved by the Land Commissioner. This survey fixed on the ground by permanent marks the location of certain sections of Block D by virtue of said Gibson certificates. In 1901, in a case pending in the District Court of Travis County, the Land Commissioner and Attorney General, for the purpose of settling all questions as to the permanent location and boundaries of Blocks D and DD, agreed with the owners of the land that certain numbered sections, selected and decreed to the owners by the judgment of said court, were located and situated on the ground as established by Twichell. The owners relinquished to the State their interest in land lying east of or adjacent to the lands mentioned in the judgment. Twichell's survey began at a monument and circular trench at Double Lakes in Lynn County and made a connection with the New Mexico line and west boundary line of Block D, Yoakum County, and located Block D on the ground. It established monuments at corners with bearings at various points in Block D in both Terry and Yoakum Counties, among which was the northeast corner of section 21, Block D, Terry County, known in the record as Rhodes Fisher corner, and another at the northeast corner of Survey 1, Block D, Yoakum County, where Twichell constructed an earthen monument with a quart tin can buried in it. By said survey Block D was tied to the New Mexico State line by establishment of well defined corners and calls at certain points for monuments on the state line. Again, in 1902, Twichell made a survey in this vicinity that gives rise to the construction of Block D, as shown by his sketch "J", that has since been generally accepted. In 1902 Twichell ran out the lines of the C-Blocks, including

Block C-34 and the east line of C-35. The east line of C-35 constitutes the east boundary line of the vacancy claimed by defendants. From here Twichell ran a tie line to the monument set by him in 1892 from a line extended south and tied into his Northeast corner of section 1, Block D. Twichell's North line of Block C-34 and C-35 and the south line of Block D, north of the C-Blocks, are the same.

Two surveyors testified, Mr. Sanders for defendants and Mr. Estes for plaintiff. In 1917 Sanders, under Twichell's instructions, made a survey in Block D, beginning in the east line of 563, Block D, with bearings, which corners and bearings had been established by Twichell in 1892. Sanders then ran to the South line of Block D, placing iron pipes with section numbers stenciled thereon. The south line of D was determined by Sanders by projecting west from the old corners on the north line of Block C-34 and the south line of D, as marked by Twichell in 1902. In 1924 Sanders located the south line of Block D for Gaines County so that an east-west county road could be graded along this line for Yoakum and Gaines Counties. Sanders marked this south line of Block D with pipe beginning with southeast line of section 883, Block D, as determined by Twichell, and placed pipes every half mile on this line to the New Mexico-Texas line on the west. This line is the center of the east-west public road, known as the county road. The center line of this road is the south line of D, as surveyed and marked on the ground by Twichell and as recognized by Sanders at the time he surveyed and marked the county road. (Sanders now says this is a mistake and said line should be farther south, giving effect to the call for distance hereinafter discussed.) The southeast corner of section 883, Block D, is recognized as being in the center of this road and was marked by Sanders in 1917, under Twichell's instructions. The surveyor witnesses agree as to the location of the northeast corners of section 1, Block D, and the southeast corner of section 80, Block DD, and that the south line of Block D was considered by Sanders as the center of said east-west road when it was established by him in 1924 in conformity to Twichell's survey. The center of this road is called for as the south line of Block D and the north line of the alleged vacancy in the lease from the State to Kidd, under which defendants claim title.

## Gaines County's North Line and Blocks A6 and A7

In 1900, eight years after Twichell's location of Block D, Col. D. S. Woods surveyed and marked a line known as the Woods County line. Col. Woods began at the northwest corner of Fisher and the northeast corner of Scurry Counties and surveyed a line between the counties west to the northwest corner of Dawson and the northeast corner of Gaines Counties. There he found "a limestone 3"x20"x20" long set in ground mkd. N.W.D. Co. on east side and N.E.G. Co. on west side * * *." His line continued west with the "north line of Gaines County" for 5 miles. There he marked a point by "a stake and Manitou water bottle in mound of sandy soil from a pit dug 2 varas to north bottle corked with slip of paper inside marked west 5 miles on north boundary of Gaines County * * *." His line continued west to a point marked by him by "a stake and a Manitou water bottle in md from pit 3½' square 2 vrs. north of md a slip of paper in bottle mkd north boundary of Gaines County 10 miles west of northeast corner D. S. Woods state surveyor." Woods then continued west two miles to a point marked by him by "transet hub and a black bottle lettered A.B.C. Co. on bottom in mound of sandy soil from a pit 2 vrs. north of md a slip of paper in bottle mkd north boundary Gaines County 12 miles west from northeast corner. July 16, 1900." In a similar manner he marked the points on the north boundary of Gaines County 15 and 20 miles west of the northeast corner of Gaines County, and in the same or similar manner marked each 5 miles as he went west to the New Mexico line. At each monument his field note calls for "the north boundary of Gaines County." His last call on said line was for the "northwest corner of Gaines County and southwest corner of Yoakum County. The east line of New Mexico 6638 vrs. south and 188 vrs. west from monument established by Twichell, miles 70 north from southeast cor. of new Mexico a stone 3"x12"x18" long set in ground. Base paved 2½ diameter with small stone cor. stone mkd. northwest cor. Gaines Co. July 22, 1900, on east side and N.M. on west side * * *."

The field notes of the Woods County line were preserved and recorded and certified to by the then Commissioner of the Land Office as a "true and correct copy from the field book of State Surveyor D. S. Woods, of a line run by him in 1900 from the northwest corner of Fisher Co. to the northwest cor. of Gaines County on the line of New Mexico. The said field book now on file in this office." Col. Woods died soon after surveying this line while he and his first assistant, Daniel Boone, and another assistant surveyor, Estes, a witness in this case, were surveying blocks A6 and A7. Woods' field notes of his county line, including his field notes of the north line of Gaines County, were, immediately after his death, filed in the Land Office and a certified copy was made under the direction of the Commissioner of the General Land Office for the purpose of preserving them. Woods' original field notes disappeared. A certified copy of the record of Woods' field notes was introduced in evidence. The original notes are now lost, but they have been of record in the General Land Office for approximately 40 years. It is conclusively shown Woods was authorized as State Surveyor to make the Survey. These field notes show a well marked line, the west end of which was designated by Woods as the "north line of Gaines County" with bearings, marks and corners at frequent intervals all along its course from the northeast to the northwest corners of Gaines County and its juncture at the latter point with the State line.

The map most frequently referred to in the testimony and the map intended by us when a map is referred to, unless otherwise designated, is plaintiff's Exhibit 254, a map made by surveyor Estes. The north line of Gaines County, as described by Woods in his field notes and marked on the ground, is shown in red on said map. Estes found and identified this line and testified to objects found thereon showing it to be the Woods County line. Sanders also ran and identified this line and agreed with Estes as to its location, at least as to the west 5 miles thereof. The surveyors also agreed on the location of the southeast corner of Survey 10, Block A7. After surveying the north line of Gaines County, Woods proceeded to lay in the A Blocks, south of his north Gaines County line and along the New Mexico border. The tract in controversy ties to sections in Block A6 and A7 and to the Woods County line. Estes assisted Col. Woods, and later Boone, in laying out the A Blocks. He came on the job after Woods had finished surveying the north line of Gaines County. Estes ran the east line of the A Blocks and one-half

the north line while Boone ran the west line and half the north line for Woods. The tracks of the wagon made by Woods' teams when the north lines of Gaines County were run and marked were then fresh on the ground and were seen by Estes in running out the northern portions of Block A6. The field notes for said block call for the Woods county line. Blocks A6 and A7 made a perfect connection with Woods county line. Estes saw some of Woods' markers on Woods county line. Woods' supply wagon had bottles in it that were hauled along for the purpose of marking the corners of the A Blocks. These corners were marked with Manitou water bottles, iron pipes, and whatever was available. Inside the bottles were placed the field notes and information as to what corner it was. The A Blocks were run from the northwest. They have no relation to Twichell's Blocks C-34 and C-35, the north line of which is coincident with Woods line and south line of Block D. Some of the surveys in Blocks A6 and A7 can still be located on the ground by the original markings fixing the corners. The surveyor witnesses agree as to the location on the ground of Blocks A6 and A7, particularly as to the location of the east line of Section 10, Block A7, the southeast corner of Section 1, Block A7, the southwest corner of Section 2, A6, the northwest corner of Section 3, Block A7, and the northwest corner of Section 5, Block A6, and the west line of Block A6. The location of the east and north lines of Block A7 by both of said surveyors is undisputed. Estes, in running the original lines of the A Blocks with Boone in 1900, made connection with the Woods County line, called for in the field notes of the A Blocks.

## Blocks C-34 and C-35

These blocks were marked by Twichell in 1902 and their north boundary line is coincident with the south boundary line of Block D. This survey by Twichell tied to his former work on the ground at the northeast corner of Block D.

## Block G (C.C.S.D. and R.G.N.G.)

·In 1915 Twichell was employed by the State to make a survey of Block G. Although this Block G, in point of time, is perhaps the oldest survey among those under consideration, it was not actually surveyed and marked on the ground until about 10 years after Block AX was located by Aiken.

## Block AX

Block AX was surveyed by State Surveyor Aiken in 1905 and 1906. The strip of unsurveyed land lying south of Block D and east of Blocks A6 and A7 was applied for as unsurveyed land in 1905 by J. M. Powell et al. Aiken's first survey of this block in 1905 showed irregularly shaped sections. Aiken's numbering and shaping of these surveys was considered confusing by the Land Commissioner who prepared a guide sketch for Aiken. The Commissioner instructed Aiken to make thirty-three 640 acre square sections (Surveys 39 to 71, inclusive); five not in a square but in rectangular form, including Surveys 33, 35, 36, 37 and 38, leaving only one survey, No. 34, in irregular form. The Commissioner told Aiken that the distances shown upon the guide sketch in the tier of surveys along the county line might not be altogether correct "as you will find it upon the ground", but that it was according to Twichell's sketch of 1902 and Aiken's recent sketch. Later Aiken was instructed to change the numberings of certain surveys so as to read 35A, 35B, 36A and 36B, as shown by Estes' map. Some of Aiken's corrected field notes were returned to him by the Land Commissioner with the requirement that the surveyor be more definite. For example, the Land Commissioner wrote him "You simply begin on N.B. line of Gaines County on S.B. line of section 897, Block D, John Gibson. At what point on said line do you begin? This should be specifically fixed, and the lines and corners of surrounding surveys called for and properly respected in field notes." Aiken's corrected field notes of sections 35A, 35B, 36A, 36B, 37 and ·38, Block AX show they are built successively east from the east boundary line of Survey 34, and call for their north lines to be coincident with the north boundary line of Gaines County and the south line of Block D. In surveying Block AX and running its north line Aiken' called for the north boundary line of Gaines County. In his original field notes of section 42, Block AX, rejected by the Land Commissioner for the reasons heretofore indicated, Aiken called for a bottle with field notes in it at the fortieth mile post on the Gaines County line, as given by D. S. Woods county line field notes. In his original field notes of sections 39, 41, and 42, AX, Aiken called for the fortieth, forty-first, and forty-sixth mile corners set by D. S. Woods for the north boundary line

of Gaines County, and the south boundary line of Block D. Evans, one of the original locators of a part of Block AX, testified he was present when Aiken surveyed the north line of Section 36A, Block AX; that Aiken then said that along that line they ought to find a bottle buried; that they dug up a bottle with field notes in it. That this was about 200 feet north of the present county road. This was undisputed. In his corrected field notes for Section 34, Block AX, Aiken ties that section to Block A6, and calls for its southwest corner to be on the east boundary line of Section 1, Block A6, and for its extreme northwest corner to be the northeast corner of Section 7, Block A6, and its northwest line to be the east line of Section 7, Block A6, which lines were well established. Aiken's field notes for Survey 34, Block AX, also call for the south boundary line of Block D and the north line of Gaines County as the same line. The field notes to Sections 6 and 7, Block A6, show their north line to be the north boundary line of Gaines County, as marked by Woods, which Boone and Woods had just finished surveying, and call for the same markings and corners called for in the Woods field notes to his county line at said points. These original field notes were filed in the Land Office and approved by the Land Commissioner. When the corrected field notes were filed, in 1939, when the land was surveyed for patent, the original field notes were canceled.

The evidence shows conclusively that Aiken knew where the Woods county line was; that he considered the Woods county line and the north boundary line of Gaines County as the same when he called for the north boundary line of Gaines County in his field notes to the surveys in Blocks AX and Section 37, Block AX, in particular. The court did not err in disregarding the jury's answers to issues 1 and 2. They were contrary to the undisputed evidence.

Aiken's field notes of Survey 37, Block AX, described it as follows: "Said land is situated in Yoakum County, about 16 miles S. 5° W. 30° from Plains, and known as Survey No. 37, in Block No. AX beginning at a md. & 4 pits the S.W. cor. of Sur. No. 38, Blk. AX on N.B. line of Sur. No. 45 Same land. Thence N. on W.B. line of Sur. No. 38—708 vrs. to its N.W. cor. Md. & 4 pits on N.B. line of Gaines County and S.B. line of Sur. No. 892 Blk. D. Jno. H. Gibson. Thence W. with N.B. line of Gaines County and S.B. line of Blk. D, Jno. H. Gibson 5104 vrs. Md. & 4 pits on S.B. line of Sur. No. 894 Blk. D. the same being the N.E. cor. of Sur. No. 36B Blk AX Thence S. on E.B. line of Sur. No. 36B 708 vrs. Md. & 4 pits on N.B. line of Sur. No. 56 Same block. Thence E on N.B. line of Surveys Nos. 56–51–50 & 45 Blk AX 5104 vrs to the place of beginning."

We emphasize the fact that Aiken's field notes, approved by the Land Commissioner, call for the north boundary line of Survey 37, Block AX, to be on the north boundary line of Gaines County and the south boundary line of Block D, and call for its west boundary line to be coincident with the east line of Survey 36B, Block AX. The latter block was based upon surveys out of Block AX to the west and south, which in turn were based upon calls for adjoinder to surveys in Blocks A6 and A7, which were established by calls for agreed monuments, points and corners found upon the ground. It should be remembered Aiken unquestionably knew the location of the Woods county line and meant the Woods county line when he called for the "N.B. line of Gaines County", and that his field notes of Survey 37, AX, show he took the north boundary line of Gaines County and the south boundary line of Block D to be coincident.

Defendants say the evidence fails to reveal the location of any ground markings called for in the field notes of Section 37, Block AX; that according to its field notes, read in connection with the field notes of the other section of the Powell grant (being surveys 54, 55, and 56, Block AX) connecting the Powell grant with the north lines of Block G, and the south line of Block D, the distance is exactly 3 miles and 708 varas from the north line of Block G to the north line of Section 37 "at which point the north line of Gaines County and the south line of Block D, Yoakum County, are called for. But when the accumulated field notes are applied to the ground, it is found that it is about 100 varas more than 3 miles and 708 varas from the north line of Block G to the south line of Block D, this extra 100 varas being the bone of contention in this lawsuit."

Defendants further say that the fact issue to be determined in this case is: Does Survey 37, Block AX, extend far enough north to include tract No. 1 described in plaintiff's petition? We think this is one way the issue may be stated. From the north line of Block G, as located and marked on

the ground by Twichell in 1915, to the north line of Survey 37, Block AX, the distance is slightly more than 3 miles and 708 varas, the distance called for in the field notes. It should be remembered in this connection that Twichell marked the north line of Block G on the ground about 5 years after Aiken prepared the field notes for Section 37, Block AX, and the field notes for the Powell grant, and there was no marked north line of Block G at the time Aiken prepared said field notes. But, Woods marked line, at least purporting to mark the north line of Gaines County, considered by Aiken to be the north line of Gaines County and to be coincident with the south line of Block D, was a recently well marked line, known to Aiken when he prepared the field notes calling for Survey 37, Block AX, to adjoin said line on the north as its northern boundary line.

█ If these conclusions are correct, then the question to be determined resolves itself into the inquiry as to whether Aiken's call for adjoinder of the north line of Survey 37, Block AX, with the north boundary line of Gaines County (the Woods county line, considered by Aiken to be also coincident with the south boundary line of Block D, as aforesaid) shall determine whether Survey 37, AX, extends far enough north to include tract No. 1, or whether said question is to be determined by the fact that there is a slight excess in distance from the north boundary line of Block G (if said boundary as marked by Twichell 5 years after the preparation and approval of Aiken's field notes is to be taken as determinative of the location of the north line of Block G) to the north boundary line of Survey 37, Block AX. It must be remembered that Aiken, in preparing his final field notes, knowing the location of the marked Woods county line, and considering that line as the north boundary line of Gaines County, called for the north boundary line of Gaines County which was the same thing as calling for the marked Woods county line, and that, therefore, Aiken's call for adjoinder of Survey 37, Block AX, to the north boundary line of Gaines County was a call for a known line marked on the ground. Under these circumstances, it is definitely established that a call for adjoinder will control over a call for distance. 7 Tex.Jur. 178; Bond v. Middleton, 137 Tex. 550, 155 S.W.2d 789; Braumiller v. Burke, 112 Tex. 387, 247 S.W. 501; Maddox v. Fenner, 79 Tex. 279, 291, 15 S.W. 237; Phillips Pet. Co. v. State, Tex.Civ.App., 63 S.W.2d 737, writ refused; Camp v. Gulf Prod. Co., 122 Tex. 383, 402, 61 S.W.2d 773; Blaffer v. State, Tex.Civ.App., 31 S.W.2d 172; Freeman v. Mahoney, 57 Tex. 621. It is unimportant whether the north line of Gaines County as marked by Woods was correct, has been changed, or is the present county line. The thing that is important is that it was a well marked line known to Aiken when he surveyed Block AX in 1905 and called for an adjoinder of Block AX with said line. This call for adjoinder controls the call for distance, even if it should be conceded that the call for the north line of Block G, not marked until 5 years later, should be given effect, thus causing a slight excess in distance over the field note call from the north line of Block G to the north line of Gaines County. We, therefore, conclude, under the circumstances disclosed, that Survey 37, Block AX, does extend far enough north to include tract No. 1 described in plaintiff's petition. The judgment is, therefore, correct.

██ The above conclusion renders immaterial the defendants' points complaining of the rejection of testimony proffered by the defendants which could not control the foregoing conclusion. The rejected testimony was relative to points not on the line in controversy, not called for in the field notes, and not explanatory of Aiken's call for adjoinder, as the result of his presumed running upon the ground of the line of adjoinder called for, and such evidence in itself only tended to create an ambiguity. Muldoon v. Sternenberg, Tex.Com.App., 161 S.W.2d 783, 785. We find the evidence sufficient to support the answers of the jury to issues 3 and 4. The certified copy of the record of Woods' field notes was admissible. Arts. 3722 and 3731.

All of defendants' contentions have been considered and are respectively overruled.

The judgment is affirmed.