A. G. File No. 0-5320



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**GERALD C. MANN**
ATTORNEY GENERAL

Game, Fish and Oyster Commission
Walton Building
Austin, Texas

Gentlemen:        Attention:  Mr. Wm. J. Tucker
                            Executive Secretary

Opinion No. 0-5320
Re:  Authority of Game, Fish and
     Oyster Commission to issue permit
     under Articles 4051-4054, R. S.,
     1925, to L.C.R.A. for removal of
     sand and gravel of commercial
     value from State-owned river beds
     without charge.

        We acknowledge receipt of your opinion request
of May 18, 1943, reading as follows:

        "At a regular meeting of the Game, Fish
        and Oyster Commission on January 19, 1937, the
        Commission, by appropriate resolution, pur-
        ported to give authority to the Colorado River
        Authority to remove sand and gravel, owned by
        the State of Texas, and under the jurisdiction
        of the Game, Fish and Oyster Commission, from
        the river bed of the Colorado River.  Applica-
        tion of the Lower Colorado River Authority to
        remove sand and gravel from the Colorado River,
        near dam sites on that river, was made by their
        Attorney, Honorable A. J. Wirtz, who stated that
        he had received an opinion from the Attorney
        General (excerpts of which he read to the Com-
        mission) which stated that the Commission had
        the authority to give a permit to the Colorado
        River Authority for the removal of sand and gravel
        from the Colorado River and to make no charge for

same. The permit that was later issued by the Game, Fish and Oyster Commission for the removal of sand and gravel was for the removal of sand and gravel of said Colorado River Authority without any payment for said material.

"It has now come to my attention that the statute of this State authorizing the Game, Fish and Oyster Commission to issue a permit for the free removal of sand and gravel from the public navigable waters of this State is restricted to such sand and gravel as may be used for public road purposes or for sea wall purposes, and does not at all relate to sand and gravel as removed to be used in the construction of dams or other such purposes than roads or sea walls.

"We recognize that it has been well established by the laws of this State that the unauthorized acts of a ministerial office of this State are not binding upon the State, and therefore, if you find that the permit issued by the Game, Fish and Oyster Commission to the Lower Colorado River Authority on January 19, 1939, was an invalid one, will you please advise us how we should proceed for the collection of the money that is due the State of Texas for the sand and gravel removed under this alleged permit.

"1. Was the permit issued by the Game, Fish and Oyster Commission on January 19, 1939, to authorize the Lower Colorado River Authority to remove sand and gravel from the State property in the Colorado River for dam construction purposes a valid permit?

"2. If you have answered this No. One question in the negative, will you please advise us what steps to take to recover any money that may be due the State of Texas for sand and gravel removed from the Colorado River by the Lower Colorado River authority for dam construction purposes, and for which payment has not been made to the State because of the issuance to said Colorado River Authority of an allegedly valid permit for the removal of said material."

Game, Fish and Oyster Commission - Page 3

We have found and examined the opinion dated May 1, 1936, referred to in your letter. It is recorded in Vol. 371 p. 560, Letter Opinions of the Attorney General. We attach a copy of same hereto. This opinion does not state that the Game, Fish and Oyster Commission is authorized to issue permits for removal of sand and gravel from state property without charge. It does hold, however, that Article 4053d, R. S. 1925, which fixes a minimum price of 4¢ a ton on sand and gravel sold by the Commissioner by and with the approval of the Governor, applies only to a sale of sand and gravel in place and does not apply "where the applicant merely desires to remove sand from a bar or reef." The opinion request from Mr. Wirtz had stated that "it is the desire of the Lower Colorado River Authority only to remove sand from bars in the Colorado and Llano Rivers." The opinion reviews the applicable statutes and points out that "no provision has been enacted giving the Lower Colorado River Authority the right to operate free of charge" and makes the statement that "it seems clear that the Legislature intended for a consideration to be paid for the sand and gravel taken from the river bed regardless of how it was done." Then suddenly without the citation of authority the opinion closes with this paragraph:

"However, Article 4053 providing for the issuance of permits to use sand or gravel included within the provisions of the Act does not provide a minimum consideration to be paid therefor as does Article 4053d. On the contrary a broad discretion is given the Game, Fish and Oyster Commissioner regarding the issuance of such permits. Upon him is placed the duty of protecting said substances from free use and unlawful disturbances and to him is given the power to prescribe the conditions or requirements upon which such permits may be issued. In other words, the writer believes that the Game, Fish & Oyster Commissioner under Article 4053 has the authority to issue a permit upon such consideration as he deems expedient, taking into consideration the nature of the agency or individual desiring to remove such substances, the use to which such substances are to be placed, and the effect of his action upon the best interests of the fund entrusted to his care and of the State of Texas as a whole."

We will now examine the question of whether or not Articles 4053 and 4053d, R. S. 1925, authorize the issuance of two different kinds of permits, viz. (1) a non-exclusive right

Game, Fish and Oyster Commission - Page 4

to take sand and gravel from State property at a price, if any, which the Game, Fish and Oyster Commission in its discretion may fix, and (2) an exclusive right to certain sand and gravel in place, which must be purchased at not less than 4 cents a ton and the permit issued by and with the approval of the Governor.

Article 4053, which is said to authorize the first kind of permit reads as follows:

"Anyone desiring to purchase any of the marl and sand of commercial value and any of the gravel, shells or mudshell included within the provisions of this chapter, or otherwise operate in any of the waters or upon any island, reef, bar, lake, bay, river, creek or bayou included in this chapter, shall first make written application therefor to the Commissioner designating the limits of the territory in which such person desires to operate. If the Commissioner is satisfied that the taking, carrying away or disturbing of the marl, gravel, sand, shells or mudshell in the designated territory would not damage or injuriously affect any oysters, oyster beds, fish inhabiting waters thereof or adjacent thereto and that such operation would not damage or injuriously affect any island, reef, bar, channel, river, or bayou used for frequent or occasional navigation, nor change or otherwise injuriously affect any current that would affect navigation, he may issue a permit to such person after such applicant shall have complied with all requirements prescribed by said Commissioner. The permit shall authorize the applicant to take, carry away or otherwise operate within the limits of such territory as may be designated therein, and for such substance or purpose only as may be named in the permit and upon the terms and conditions of the permit. No permit shall be assignable, and a failure or refusal of the holder to comply with the terms and conditions of such permit shall operate as an immediate termination and revocation of all rights conferred therein or claimed thereunder. No special privilege or exclusive right shall be granted to any person, association of persons, corporate or otherwise, to take or carry away any of such products from any territory or to otherwise operate in or upon any island, reef, bay, lake, river, creek, or bayou included in this chapter."

Game, Fish & Oyster Commission - Page 5

Article 4053d, which is said to authorize the second kind of permit, reads as follows:

"The Game, Fish and Oyster Commissioner by and with the approval of the Governor, may sell the marl, gravel, sand, shell or mudshell included within this Act, upon such terms and conditions as he may deem proper, but for not less than four (4c) cents per ton, and payment therefor shall be made to said Commissioner. The proceeds arising from such sale shall be transmitted to the State Treasurer and be credited to a special fund hereby created to be known as the sand, gravel and shell fund of the State, and may be expended by the said Commissioner in the enforcement of the provisions of the sand, shell and gravel laws and in the establishment and maintenance of fish hatcheries, when provided by legislative appropriation, and in the payment of refunds provided for in Section 7, Chapter 161, of the General Laws of the Regular Session of the Thirty-eighth Legislature, to counties, cities or towns or any political subdivision of a county, city or town, as provided for in Section 7, Chapter 161, of the General Laws of the Regular Session of the Thirty-eighth Legislature. And also providing that the authorization of refunds on sand, gravel and shell shall be extended to include refunds to the State Highway Commission of money paid the State through the Game, Fish and Oyster Commission for sand, gravel and shell used by the State Highway Commission on public roads upon application for such refunds in the manner prescribed for cites and counties. Provided further that not less than seventy-five per cent of the proceeds derived therefrom, after refunds above referred to have been cared for, shall go for the establishment and maintenance of fish hatcheries; and the sand, gravel, and shell fund is hereby appropriated for the purpose of carrying out the provisions of this Act. Said hatcheries to be established from time to time in the State of Texas by the Fish, Game and Oyster Commission, when in their judgment a suitable location is secured and arrangements therefor have been completed."

Game, Fish and Oyster Commission - Page 6

These articles must be considered along with Articles 4051, 4052 and 4054, which read as follows:

"Art. 4051. All the islands, reefs, bars, lakes and bays within the tidewater limits from the most inferior point seaward co-extensive with the jurisdiction of this State, and such of the fresh water islands, lakes, rivers, creeks and bayous within the interior of this State as may not be embraced in any survey of private land, together with all the marl and sand of commercial value, and all the shells, mudshell or gravel of whatsoever kind that may be in or upon any island, reef or bar, and in or upon the bottoms of any lake, bay, shallow water, rivers, creeks and bayous and fish hatcheries and oyster beds within the jurisdiction and territory herein defined, are included within the provisions of this chapter, and are hereby placed under the management, control and protection of the Commissioner. None of the marl, gravel, shells, mudshells or sand included herein shall be purchased, taken away or disturbed, except as provided herein, nor shall any oyster beds or fish hatcheries within the territory included herein be disturbed except as herein provided."

"Art. 4052. The Commissioner is hereby invested with all the power and authority necessary to carry into effect the provisions of this chapter, and shall have full charge and discretion over all matters pertaining to the sale, the taking, carrying away or disturbing of all marl, sand or gravel of commercial value, and all gravel and shells or mudshell and oyster beds and their protection from free use and unlawful disturbing or appropriation of same, with such exceptions as may be provided herein."

"Art. 4054. If any county, or subdivision of a county, city or town should desire any marl, gravel, sand, shell or mudshell included in this chapter for use in the building of any road or street, which work is done by said county, or any subdivision of a county, city or town, such municipality may be granted a permit without charge and shall have the right to take, carry away or operate in any waters or upon any islands, reefs, or bars included herein; such municipality to do the work under its own supervision, but shall first obtain from the Commissioner a permit to do

Game, Fish and Oyster Commission - Page 7

so, and the granting of same for the operation in
the territory designated by such municipality shall
be subject to the same rules, regulations and
limitations and discretion of the Commissioner as
are other applicants and permits. When such build-
ing of roads or taking of such products is to be
done by contract, then the said municipality may
obtain a refund from the Commissioner of the tax
levied and collected on said products as fixed by
the Commissioner at the time of the taking thereof,
by warrant drawn by the Comptroller upon itemized
account sworn to by the proper officer representing
such municipality and approved by the Commissioner,
and under such other rules and regulations as may
be prescribed by the Commissioner."

These five articles were originally enacted in 1911
as part of Ch. 68, Acts 32nd. Legislature, Reg. Sess. p. 118.
At that time they did not authorize the issuance of a permit
to take sand from "fresh water islands -- rivers, creeks
and bayous" and did not include gravel. All of the other pro-
visions were in the original act except that the minimum price
was "not less than ten cents per cubic yard" and in lieu the
provisions for payment of refunds contained in Article 4053d,
above, the original act contained this provision:

"If any county, or any subdivision of a county,
city or town should desire any marl, sand, or shell or
mudshell included in this Act for use in the building
of any road or street, which work is done by such
county, or any subdivision of a county, city or town,
such county or any subdivision of a county, city or
town may be granted a permit without charge and shall
have the right to take, carry away or operate in any
waters, or upon any islands, reefs, or bars included
in this Act, and this whether such county, subdivision
of a county, cith or town does the work under its
own supervision or by contract, but such county, or
any subdivision of a county, city or town shall first
obtain from the said Commissioner a permit to do so,
and the granting of same for the operation in the
territory designated by such county, or any subdivision
of a county, city or town, shall be subject to the same
rules, regulations and limitations and discretion of
the said Commissioner as are other applicants and
permits."

The caption of the 1911 Act reads in part "an Act . . . to provide for the sale and protection of all marl and sand of commercial value."

This Act was amended and re-enacted in 1919, Ch. 74, Gen. Laws, 36th Legislature, 2nd C. S. p. 215-218. The caption quotes the caption of the 1911 Act and continues with the words "by adding thereto the management, control, sale and protection by the Game, Fish and Oyster Commissioner of all gravel, marl, sand, shell or mudshell that may be in or upon any island, lake, river, creek, or bayou, within the interior of this State as may not be embraced in any survey of private land; and providing for a refund to any county, subdivision of a county, or city or town of all moneys which may be paid by them for the taking of marl, sand, gravel, shells or mudshell from the public waters of the State and declaring an emergency." The emergency clause recited that "the fact that large quantities of marl, sand, and gravel, shell or mudshell belonging to the State are being taken and carried away daily without the State receiving remuneration for same creates an emergency", etc. The 1919 Act added fresh water islands, rivers, creeks and bayous to the territories covered by the 1911 Act and gravel to the list of products. All other provisions of the 1911 statute were re-enacted, except that Section 8, quoted above, was re-worded so that it no longer authorized the issuance of a permit without charge to "any county, or subdivision of a county, city or town" for the building of roads or streets where the work was to be done by contract but in such cases authorized a refund to the county or any subdivision of a county, city or town "of the tax levied and collected on said gravel, marl, sand, or shell or mudshell, as fixed by the Game, Fish and Oyster Commissioner at the time of the taking thereof." Sec. 7, Ch. 74, Gen. Laws, 36th. Legis. was re-enacted in 1923 by Section 7, Chapter 161, General Laws, 38th. Legislature, Regular Session, and amended only to the extent of adding a sentence appropriating out of the fish and oyster fund such amount as may be necessary to pay "counties, cities and towns" for refunds on just claims accruing subsequent to October 20, 1921.

Only that portion of Sec. 7, which was part of the 1919 Act, was brought forward in the 1925 Codification as Article 4054, above quoted. The appropriation which was added by the 1923 amendment was dropped, because in 1925 Section 6 of Ch. 74, Gen. Laws (1919) 36th. Legis., Second C. S., was amended so as to create a special fund known as the sand, gravel and shell fund and the Game, Fish and Oyster Commissioner was given authority to pay refunds out of that special fund. This 1925 amendment

Game, Fish and Oyster Commission - Page 9

of Section 6 of the 1919 Act also provided for refunds to the
State Highway Commission "of money paid the State through the
Game, Fish and Oyster Commission for sand, gravel and shell
used by the State Highway Commission on public roads." This
1925 amendment of Sec. 6 of the 1919 Act was brought forward
in the 1925 codification as Article 4053d, quoted above.

Articles 4051, 4052 and 4053, quoted above, have not
been materially changed since they were enacted in 1919 as a
part of Chapter 74, General Laws, 36th. Legis., Second Called
Session.

It appears from the foregoing review of the history
of the above quoted articles, that minimum price provisions
for the sale of sand, marl, etc. were first enacted as a part
of the 1911 Act and that the exact language of the first
sentence of Article 4053d, quoted above, was incorporated in
the 1919 Act. As a part of the 1919 Act also was the language
now incorporated as the last sentence of Article 4053, stating
that "no special privilege or exclusive right shall be granted
to any person, association of persons, corporate or otherwise,
to take or carry away any marl, gravel, sand, shell or mud-
shell from any territory or to otherwise operate in or upon
any island, reef, bay, lake, river, creek or bayou included in
this act."

That the issuance of a permit to the Lower Colorado
River Authority to remove sand and gravel from state property
without charge was a privilege can hardly be denied. It was
a privilege that, under the articles quoted above, could only
be granted to a county or a subdivision of a county, city or
town when the sand and gravel was for use in building a road or
street and when the work was being done by "such municipality"
itself and not by contract. Art. 4054. The Lower Colorado
River Authority is a governmental agency and its Board of Di-
rectors is a State Board, Lower Colorado River Authority vs.
McCraw, 125 Tex. 268, 83 S. W. (2) 629, but there is no pro-
vision in the act of its creation giving it authority to use
sand and gravel from State property without charge. Article
8194, et seq., Vernon's Annotated Civil Statutes. Even the
State Highway Commission when building public roads with state
funds must pay the minimum tax of 4¢ per ton and make applica-
tion for refunds in the manner prescribed for cities and
counties. Art. 4053d. The statutes above quoted must be con-

strued together since they relate to the same subject of legislation and were in their principal provisions parts of the same Act. 39 Tex. Jur. 253. However, we find no ambiguity or inconsistency in their provisions whether they are considered separately or together. Article 4053 gives the Game, Fish and Oyster Commission a discretion in determining whether to issue a permit. It must be satisfied (1) that the taking, carrying away or disturbing of the marl, gravel, sand, shells, or mudshell in the designated territory would not damage or injuriously affect any oysters, oyster beds, fish inhabiting waters thereof or adjacent thereto, (2) that such operation would not damage or injuriously affect any island, reef, bar, channel, river, creek or bayou used for frequent or occasional navigation, nor (3) that such operation would not change or otherwise injuriously affect any current that would affect navigation. These are the matters that are placed within its discretion. Art. 4053. It could refuse a permit on any one or all of those grounds no matter how much the applicant was willing to pay but it has no discretion in determining whether or not to charge the minimum price of 4¢ per ton when sand, gravel etc. was being removed and appropriated by the applicant. There may be cases where the permit would authorize operations on the State's property which would not involve a taking or appropriation of the sand, gravel, etc. of commercial value. In such case the approval of the Governor to the issuance of the permit would not be necessary because no sale is involved or contemplated. This was not true, however, in regard to the permit issued to the Lower Colorado River Authority. There the sand and gravel was removed from "bars in the Colorado and Llano Rivers" and, as we understand the facts, used in constructing dams and other properties belonging to the L. C. R. A.

The language of the above quoted statutes cannot, in our opinion, be construed as giving the Game, Fish and Oyster Commission discretion in issuing permits for the sale of sand and gravel to persons not named in the Act for less than 4¢ per ton. But even if the statutes were not clear on this point and a construction were necessary, we would hold that the Commission did not have this discretion in view of the character and legal history of the State property involved.

The beds of navigable rivers are the same species of State property as islands and the shores of the sea. Under the Civil Law and the common law as applied in Texas, this character of property was in a peculiar sense held by the government in trust for the use and benefit of all the people and was never subject to location and sale as "public lands". Roberts v.

Game, Fish and Oyster Commission - Page 11

Terrell, 101 Tex. 577, 110 S. W. 733; DeMeritt v. Robison, 102 Tex. 358, 110 S. W. 796; State v. Bradford, 121 Tex. 515, 50 S. W. (2) 1065; Manry v. Robison, 122 Tex. 213, 56 S. W. (2d) 438, City of Galveston v. Mann, 135 Tex. 319, 143 S. W. (2) 1028. In State v. Bradford, the Supreme Court said:

"From its earliest history this state has announced its public policy that lands underlying navigable waters are held in trust by the state for the use and benefit of all the people. Rosborough v. Picton, 12 Tex. Civ. App. 113, 34 S. W. 791, 43 S. W. 1033, and cases cited therein; Landry v. Robison, 110 Tex. 295, 219 S.W. 819; Hynes v. Packard 92 Tex. 44, 45 S. W. 562.

"The rule is also firmly established that land under navigable waters passes by grant or sale only when so expressly provided for by the sovereign authority, and there is no presumption that there has been any act of the government which could have the effect of passing away its title. No power under the law is given the surveyor or the land commissioner to grant soil under navigable waters, and no subsequent recognition or confirmation by the land commissioner of a survey made to pass soil under such waters will be presumed. Rosborough v. Picton, 12 Tex. Civ. App. 113, 34 S. W. 791, 43 S. W. 1033; City of Galveston v. Menard, 23 Tex. 349; Galveston City Surf Bathing Co. v. Heidenheimer, 63 Tex. 562; Arnold v. Mundy, 6 N. J. Law, 1, 10 Am. Dec. 356; Tatum v. Sawyer, 29 N. C. (Hawks) 226; Martin v. Waddell, 16 Pet. 369, 10 L. Ed. 997."

That case held that the north fork of Red River was a navigable stream. The test for determining whether the bed or channel of a stream is state property is whether or not the stream is navigable under Article 5302, Vernon's Ann. Civil Statutes. If a stream "retains an average width of thirty feet from the mouth up" (Art. 5302) to the point under inquiry, its bed belongs to the State regardless of when the riparian lands were granted and even though at the time of inquiry the river may not have a drop of water in it. Manry v. Robison, supra, Diversion Lake Club v. Heath, 126 Tex. 129, 86 S. W. (2) 441; Whittenburg v. State, 157 S. W. (2d) 691, error refused.

Game, Fish and Oyster Commission - Page 12

The power of the legislature to determine by statute the disposition to be made of the beds or channels of navigable streams and their products is now recognized. State v. Black Bros. 116 Tex. 615, 297 S. W. 213, 53 A.L.R. 1181; Stephenson v. Wood, 119 T. 564, 34 S. W. (2) 246. In opinion No. O-4329, approved April 1, 1942, this department ruled that H. B. 9, Acts 46th. Legislature (1939) now Article 5421c, Vernon's Ann. Civil Statute, did not affect or impair the authority of the Game, Fish and Oyster Commission to administer the sale of marl, gravel, sand, shell and mudshell under the provisions of Chapter 3, Title 67, Article 4051, et seq., R.S. 1925.

Prior to the 1919 Act, discussed above, all members of the public had the right to take sand and gravel from the beds of navigable rivers in this State. In Goar v. City of Rosenberg (1909), 115 S. W. 653, the Galveston Court of Civil Appeals in an opinion by Pleasants, C. J., held that the City of Rosenberg had no authority to prevent the public from taking gravel out of that part of the bed of the Brazos River which adjoined that city. The Court said:

"In so far as the gravel which has accumulated in the bed of the river is concerned, while appellant, (a riparian owner) has no exclusive right to remove and appropriate same, he has equal rights with other citizens therein, and so long as he does not interfere with the rights of others in said gravel, he cannot be restrained from the exercise of the rights common to him and other citizens."

In the recent case of Cago Bros. v. Whiteman, 139 Tex. 522, 163 S. W. (2d) 638, it was held that a sand and gravel lease, like an oil lease, vested in the lessee a determinable fee to the sand and gravel on and under the land. It was further held in that case that the owner's remedy for sand and gravel wrongfully converted under an invalid lease was an action for damages to the extent of the loss suffered.

We are of the opinion that Articles 4051-4054, above quoted, do not authorize the Game, Fish and Oyster Commission to make a sand and gravel lease. The last sentence of Article 4053, providing that "No . . . exclusive right shall be granted to any person, association of persons, corporate or otherwise" forbids a sale of sand and gravel in place. Under the rule of strict construction of grants of power for disposing of this species of state property as laid down in the cases of Roberts

Game, Fish and Oyster Commission - Page 13

vs. Terrell, DeMeritt v. Robison and State v. Bradford, cited above, we are of the opinion that the only authority the Game, Fish and Oyster Commission has to permit the taking and carrying away of sand and gravel of commercial value from State-owned river beds is through the issuance by and with the consent of the Governor of a non-exclusive permit providing for payment to the Commission of not less than 4¢ per ton. See our opinions Nos. 0-2209 and 0-2209A, which were issued to you on April 25, 1940 and May 21, 1940.

It is well settled that the State cannot be estopped by the acts of its officers done in the exercise of a power not conferred upon them. 34 Tex. Jur. 462. The powers of State officers being fixed by law, all persons dealing with them are charged with knowledge of the extent of their authority or power to bind the State, and are bound, at their peril, to ascertain whether the contemplated contract is within the power conferred. 38 Tex. Jur. 840. Nichols v. State, 32 S. W. 452, error refused; Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S. W. (2) 660; State v. Ragland Clinic Hospital, 138 Tex. 393, 159 S. W. (2d) 105. The Commission having exceeded its authority in issuing a permit to L.C.R.A. to take sand and gravel of commercial value without charge, the permit was void and the State may now enforce payment by L.C.R.A. of the value of the sand and gravel, which was wrongfully taken. State v. Macken, 162 S.W. 1160, error refused; State v. Bradford, 121 Tex. 515, 50 S. W. (2d) 1065; Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S. W. (2d) 660; and Cage Bros. v. Whiteman, 139 Tex. 522, 163 S. W. (2d) 638.

We accordingly answer your first question in the negative. As to your second question, we suggest that you ascertain from any available sources and through the exercise of your statutory powers the amount of sand and gravel which has been wrongfully taken by L. C. R. A. from river beds belonging to the State by virtue of the invalid permit and make demand on L. C. R. A for payment of the value of such sand and gravel at the established price (of not less than 4¢ a ton) for which the Commission was selling sand and gravel at the time of the wrongful taking.

Trusting that the foregoing answers your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Fagan Dickson_
Fagan Dickson

APPROVED JUN 2, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

FD:bt

ok.
C.S.R.

APPROVED
OPINION
COMMITTEE
BY _BW_
CHAIRMAN