## DEAN v. THOMPSON.
### No. 6382.

Court of Civil Appeals of Texas. Texarkana.
June 24, 1948.

Rehearing Denied Sept. 9, 1948.

Florence & Florence, of Gilmer, and D. S. Meredith, Jr., of Longview, for appellant.

Edwin M. Fulton, of Gilmer, L. F. Sanders, of Canton, and W. C. Hancock, of Pittsburg, for appellee.

HARVEY, Justice.

Fred Thompson sued John Dean of Upshur County in trespass to try title and, alternatively, for actual damages in the sum of $3,000 and $1,000 exemplary damages, for the value of timber alleged to have been converted by the defendant, or for damages in the sum of $2,000 for the alleged cutting by defendant of 87 pine trees on the land of plaintiff. The suit was tried to the court without a jury, and from the judgment entered in favor of plaintiff for the title and possession of the land involved and for the sum of $90 representing the value of trees removed from plaintiff's land, the defendant has perfected this appeal.

The heirs of J. H. Thompson partitioned a tract of 100 acres of land in Upshur County, and by agreement one of the parties who owned several interests was awarded 50 acres on the east side of the 100-acre tract; the other 50-acre tract was

divided into six blocks, each of which was to contain approximately 8.4 acres. Block No. 3 was awarded to Fred Thompson, one of the heirs. In the description of Block No. 3 the call for the north boundary line was from a point in the west boundary line of Block No. 1, thence west 142.9 varas, a stake; the call for the south boundary line of Block No. 3 was for the same distance. The description of the land contained in plaintiff's petition filed in court differed from the deed description in that in the petition the call for the north boundary was "West 185 varas, stake, in E. B. L. Block No. 6, 19 varas South of the S. E. C. of Block No. 5," and the call for the south boundary line of Block No. 3 is "East 199 varas to place of beginning." Thus it will be noted that the petition description of the north line of Block No. 3 is about 42 varas longer than the deed description of such line, and the petition description of the south boundary line is 57 varas longer than the deed description. The trees alleged to have been cut and converted by defendant were between the west boundary line of the deed call and that of the petition call.

On the trial of the case a sureyor who testified for the defendant stated that in 1938 he surveyed and made the partition field notes of the Thompson 100-acre tract of land at the request of certain heirs. He ran the outer lines of the 100 acres and ran the west boundary line of Block No. 1, which was to contain 50 acres. There is no dispute as to the location on the ground of the west boundary line of the 50-acre tract. The surveyor further testified that he set the southeast corner of Block No. 4, which was the northeast corner of Block No. 3. After establishing other corners for the various blocks, supposed to contain 8.4 acres each, he set stakes for the southwest and northwest corners of Block No. 3, 142 varas west of the southeast and northwest corners, respectively, of said Block No. 3. On a line running north to south through the 100-acre tract, which was on the west boundary of Block No. 3 in dispute herein, he stated that he set a total of six stakes. On the other hand, witnesses for the plaintiff testified that they were with the surveyor when he made the survey; their testimony, together with that of a surveyor who ran the lines for the plaintiff, indicates that the surveyor set the stakes for the west boundary line of Block No. 3 further west than 142.9 varas from the east boundary line of such block; that at the time the survey was made the stake for the northwest corner of Block No. 3 was set 185 varas west of the northeast corner of such block, and the southwest corner of Block No. 3 was 199 varas west of its southeast corner. Fred Thompson and his son stated that shortly after the surveyor ran the lines and after Thompson found that he was to receive Block No. 3 as his share, they went upon the ground and found the original stakes representing the four corners of Block No. 3 and drove iron stakes alongside the wooden stakes set up by the surveyor. The surveyor who made the original survey, prior to the trial of the case, went upon the ground and found no evidence of any wooden stakes at the positions where he said he placed them in 1938, but he did find the iron and wooden stakes described by the other witnesses. Another surveyor testified that he ran the lines and found iron and wooden stakes at the positions indicated in the description as contained in the petition; that he made a search for the stakes, or some evidence of them, that the original surveyor said that he set, but found none; that he did find iron stakes and wooden stakes at the points further west where other witnesses claimed the original surveyor established the northwest and southwest corners of Block No. 3. There is quite a bit of additional testimony, conflicting with that given by the surveyor who partitioned the tract, with reference to the location of other corners and the survey as originally made. The first surveyor's field notes called for 8.4 acres in each of the six blocks west of Block No. 1, but all of them have an excess acreage, varying from 9 acres to 13 acres total, in each Block. Block No. 1, instead of containing 50 acres contains about 47 acres.

■ The question of the location of the west boundary line of Block No. 3 was one of fact. The trial judge found under the evidence that instead of being 142.9

varas west of the west boundary line of Block No. 1, the northwest corner of Block No. 3 was 185 varas west of a point in the west boundary line of Block No. 1, and the southwest corner of Block No. 3 was 199 varas west of a point in the west boundary line of Block No. 1. The principle of law involved herein is that where a call in a deed is for a stake, if the stake can be found or its location accounted for, it controls over a call for distance. 7 Tex.Jur., Sec. 41; Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317; Muldoon v. Sternenberg, 139 Tex. 22, 161 S.W.2d 783. The trial court having found, upon disputed facts, that the location of the west boundary line of Block No. 3 was located at the point as contended for by the plaintiff below, his determination of that question will not be disturbed.

The plaintiff's petition alleged that "defendant and his agents, servants and employees * * * cut and removed from the land above described belonging to the plaintiff, all the merchantable pine timber thereon being about 87 pine trees and converted said property to his own use and benefit * * *." The proof showed that Dean bought timber on two tracts lying west of the Fred Thompson block; that his two brothers cut the timber and processed it at their sawmill into rough lumber under an agreement with Dean by which he was to pay them $30 per thousand for cutting and processing it. Under the allegations of the petition, we think the facts are sufficient to support the judgment. While John Dean did not cut the timber, still it was delivered to him and was converted to his use. The petition alleged a conversion of the timber. The evidence is ample to support the fact finding by the trial judge that 6,000 board feet were cut on plaintiff's land, and that such timber had a market value of $15 per thousand feet. Dean himself testified that he received all of the timber cut on the land in question. In an action for conversion, if the one who converts timber has done so inadvertently and without willfulness, the measure of damages is the value of the trees in the stumpage; that is, at the time they were severed.

A different rule is applicable where the conversion was willful. The trial court did not find that the cutting of the trees belonging to plaintiff was done willfully, and therefore the proper measure of damage to be applied was the value of the trees as of the time when they were cut, and not their value after they had been processed.

The judgment of the trial court is affirmed.